**[ORAL ARGUMENT IS REQUESTED]**

**No. 13-1374**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

**TAB BONIDY, et al.,**

**Plaintiffs-Appellees,**

**v.**

**UNITED STATES POSTAL SERVICE, et al.,**

**Defendants-Appellants.**

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE RICHARD P. MATSCH
**Case No. 10-cv-2408**

———————————————

**BRIEF FOR APPELLANTS**

———————————————

STUART F. DELERY
  *Assistant Attorney General*

JOHN F. WALSH
  *United States Attorney*

MICHAEL S. RAAB
DANIEL TENNY
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUE..........................................................................2

STATEMENT OF THE CASE ..........................................................................2

STATEMENT..........................................................................................................3

A.    Factual Background. ...........................................................................3

B.    Prior Proceedings .................................................................................6

SUMMARY OF ARGUMENT........................................................................11

STANDARD OF REVIEW...............................................................................13

ARGUMENT ........................................................................................................13

BONIDY HAS NO SECOND AMENDMENT RIGHT TO BRING
A WEAPON ONTO GOVERNMENT PROPERTY .......................................13

A.    The right protected by the Second Amendment does not
      extend to government property.............................................................13

      1.    The Supreme Court's cases addressed only the right
            to bear arms for purposes of self-defense in the home ..............13

      2.    Courts of appeals have recognized the validity of
            various firearms restrictions that do not prevent
            law-abiding citizens from possessing firearms
            in the home ........................................................................17

3.      State courts have recognized the validity of firearms
        restrictions in particular locations ................................................18

4.      The restriction at issue here does not infringe upon
        the right protected by the Second Amendment ..........................21

5.      Neither the distinction between the Post Office
        building and the adjacent parking lot nor the distinction
        between this postal parking lot and other postal parking
        lots has constitutional significance ...............................................23

B.   If the Second Amendment applied, the Postal Service regulation
     would satisfy any plausibly relevant level of scrutiny .......................27

1.      The regulation advances the government's substantial
        interest in protecting public safety ...............................................28

2.      Other courts of appeals have recognized the validity of
        analogous regulations ...................................................................34

CONCLUSION ...................................................................................................38

ORAL ARGUMENT STATEMENT

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

CERTIFICATE OF SERVICE

CERTIFICATE OF DIGITAL SUBMISSION

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page**</span>

*Adderley v. Florida*,
385 U.S. 39 (1966) ........................................................ 22

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........................................... 2, 7, 13, 14, 15, 16,
17, 18, 21, 23, 25, 26

*Doe v. Wilmington Hous. Auth.*,
880 F. Supp. 2d 513 (D. Del. 2012) ............................... 26

*English v. State*,
35 Tex. 473 (1871) ....................................................... 19

*Hill v. State*,
53 Ga. 472 (1874) ..................................................... 18, 19

*Kachalsky v. Cnty. of Westchester*,
701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013) ................... 35

*McDonald v. City of Chicago, Illinois*,
130 S. Ct. 3020 (2010) ................................................ 15, 16, 21, 25

*Moore v. Madigan*,
702 F.3d 933 (7th Cir. 2012) ........................................... 6, 36, 37

*Nordyke v. King*,
563 F.3d 439 (9th Cir. 2009), *vacated*, 611 F.3d 1015 (9th Cir. 2010) .......... 26

*Peterson v. Martinez*,
707 F.3d 1197 (10th Cir. 2013) ...................................... 6, 13, 17, 36

*State v. Shelby*,
2 S.W. 468 (Mo. 1886) ................................................ 20

*State v. Wilforth*,
    74 Mo. 528 (1881) ........................................................... 20

*United States v. Dorosan*,
    350 F. App'x 874 (5th Cir. 2009) ..............................................8, 22

*United States v. Dorosan*,
    No. 08-042, 2008 WL 2622996 (E.D. La. June 30, 2008) ............................... 8

*United States v. Huitron-Guizar*,
    678 F.3d 1164 (10th Cir. 2012) ....................................17, 18, 31, 32

*United States v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2011) .......................................16, 22, 25, 35

*United States v. McCane*,
    573 F.3d 1037 (10th Cir. 2009) ..............................................17, 18

*United States v. Reese*,
    627 F.3d 792 (10th Cir. 2010) ........................................28, 32, 33

*United States v. Williams*,
    616 F.3d 685 (7th Cir. 2010) ...................................................... 28

*United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*,
    453 U.S. 114 (1981) .......................................................... 32

*Wilson v. State*,
    33 Ark. 557 (1878) ........................................................... 20

*Woollard v. Gallagher*,
    712 F.3d 865 (4th Cir. 2013), *cert. denied*,
    2013 WL 3479421 (U.S. Oct. 15, 2013) ........................................ 35

**Constitution:**

U.S. Const. art. IV, § 3, cl. 2 ............................................................... 22

**Statutes:**

18 U.S.C. § 3061(c) ........................................................................... 22

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

Act of Apr. 12, 1871, ch. 34, 1871 Tex. Gen. Laws 25-26............................... 19

Act of Oct. 18, 1870, No. 285, 1870 Ga. Laws 421 ......................................19, 20

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ..................................................................... 1

**Regulations:**

39 C.F.R. § 232.1(*l*) .............................................................................. 4

39 C.F.R. § 232.1(p) ............................................................................. 4

## STATEMENT OF RELATED CASES

We are aware of no prior or related appeals.

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

————

No. 13-1374

————

TAB BONIDY, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES POSTAL SERVICE, et al.,

Defendants-Appellants.

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE RICHARD P. MATSCH
Case No. 10-cv-2408

————

BRIEF FOR APPELLANTS

————

## JURISDICTIONAL STATEMENT

The district court's jurisdiction was invoked under 28 U.S.C. § 1331.

On July 9, 2013, the district court entered a final order resolving cross-

motions for summary judgment. The government timely appealed on

September 6, 2013. *See* Fed. R. App. P. 4(a)(1)(B). This Court has

jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court erred in concluding that a regulation prohibiting firearms and explosives on Postal Service property was unconstitutional as applied to the parking lot of the post office in Avon, Colorado.  (Raised in Motion for Summary Judgment [Aplt. App. A29].)

## STATEMENT OF THE CASE

Since 1972, the United States Postal Service has prohibited firearms and explosives on Postal Service property.  In this case, plaintiffs Tab Bonidy and the National Association of Gun Rights argued that the Second Amendment entitled Bonidy to bring a firearm to his local post office. Citing the Supreme Court's statement in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), that the Court's Second Amendment holding in that case should not "be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," the district court concluded that Bonidy has no Second Amendment right to bring a firearm into the post office.  But the district court concluded that Bonidy does have a Second Amendment right to bring a firearm into the parking lot adjoining the post office, and ordered the government to permit him to do so.

Both sides appeal.  This brief presents the government's challenge to the portion of the district court's ruling that partially invalidates the regulation as applied to Bonidy.

## STATEMENT

**A.    Factual Background.**

1.  The United States Postal Inspection Service works "to support and protect the U.S. Postal Service and its employees, infrastructure, and customers."  Milke Decl. ¶ 1 [Aplt. App. A84].  One of the Inspection Service's functions is to keep postal property safe for employees and patrons of the Postal Service.  "Criminals frequently target the United States Postal Service because of the valuable information and property contained in or transmitted through the mail."  *Id.* ¶ 16 [Aplt. App. A89].  Of particular relevance here, postal parking lots have been the scene of a number of crimes against postal patrons.  *See id.* ¶¶ 47–48 [Aplt. App. A99].

This case concerns "one of many security measures used by the Postal Service to ensure the safety of its employees, customers, property, and the U.S. Mail."  *Id.* ¶ 41 [Aplt. App. A97].  The regulation at issue, promulgated by the U.S. Postal Service in 1972, reads as follows:

> Weapons and explosives.  Notwithstanding the provisions of
> any other law, rule or regulation, no person while on postal
> property may carry firearms, other dangerous or deadly
> weapons, or explosives, either openly or concealed, or store the
> same on postal property, except for official purposes.

39 C.F.R. § 232.1(*l*).  Violations are punishable by a fine, imprisonment up

to thirty days, or both.  *Id.* § 232.1(p).

2.  This lawsuit is a challenge to the application of the firearms

regulation to the post office in Avon, Colorado.  The Avon Post Office does

not provide delivery service to residents.  SJ Op. 2 [Aplt. App. A916].

Instead, the Postal Service provides free P.O. boxes to people who live in

the area.  *Id.*  The P.O. boxes are located inside the post office building, in a

portion that is accessible to the public at all times.  *Id.*

The parking lot outside the Avon Post Office is owned by the United

States government, but is also accessible to the public at all times.  *Id.* at 3

[Aplt. App. A917]  There is a sign posted that reads "US POSTAL

PROPERTY / 30 MINUTE PARKING / VIOLATORS WILL BE TOWED

AT OWNERS EXPENSE," although the record does not suggest that the 30-

minute limit is regularly enforced.  *Id.*  There is also public parking on the

street directly in front of the post office, which is not owned by the United

States.  *See* Padilla Decl. ¶ 2 [Aplt. App. A762–63]; Padilla-1, Aerial

Photographs of Avon [Aplt. App. A765–68]

   The plaintiffs are an individual, Tab Bonidy, and the National

Association for Gun Rights.  Bonidy has a state-issued license to carry a

concealed handgun, and regularly does so.  SJ Op. 3 [Aplt. App. A917].

Bonidy wishes to bring his handgun with him when he goes to pick up his

mail at his free P.O. box.  His counsel thus sent a letter to the Postal Service

asking whether Bonidy would be prosecuted if he brought his firearm into

the Post Office or stored it in his vehicle in the public parking lot.  The

Postal Service's General Counsel responded that "the regulations

governing Conduct on Postal Property prevent [Bonidy] from carrying

firearms, openly or concealed, onto any real property under the charge and

control of the Postal Service. . . .  There are limited exceptions to this policy

that would not apply here."  *See id.* (quoting letter).  According to Bonidy,

an employee usually picks up his mail at the post office, although Bonidy

sometimes does so himself.  Bonidy Dep. 49–50 [Aplt. App. A467].

## B.    Prior Proceedings.

On cross-motions for summary judgment, the district court upheld the regulation as applied to the post office building, but struck it down as applied to the parking lot.

The court first noted that this Court has held that "the scope of the Second Amendment's protection does not include a right to carry a concealed firearm outside the home."  SJ Op. 4 [Aplt. App. A918] (citing *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013)).  The district court thus rejected plaintiffs' claim that Bonidy "should be free to carry his concealed handgun on his person in the Avon Post Office and parking lot." *Id.* at 5 [Aplt. App. A919].  The court noted, however, that the Tenth Circuit "explicitly declined" to "address whether open carry of firearms outside the home is similarly unprotected."  *Id.*  Agreeing with the Seventh Circuit's decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), the district court concluded "that the Second Amendment protects the right to openly carry firearms outside the home for a lawful purpose, subject to such restrictions as may be reasonably related to public safety."  SJ Op. 5 [Aplt. App. A919].

6

The district court noted that in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court "recognized that there are many circumstances in which restrictions on the freedom to carry firearms are presumptively valid—including the exclusion of firearms from government buildings." SJ Op. 5 [Aplt. App. A919] (citing *Heller*, 554 U.S. at 626, 627 n.26). In *Heller*, the Supreme Court stated that its opinion should not "be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626. The district court here concluded that the "Avon Post Office building is used for a governmental purpose by significant numbers of people, with no means of securing their safety; therefore, it is a sensitive place, and the [Postal Service] Regulation is presumed to be valid as applied to the building." SJ Op. 5 [Aplt. App. A919]. Plaintiffs had failed to rebut the presumption of validity, and Bonidy's "claim to carry his gun into the building must therefore be denied." *Id.*

The court concluded that the analysis was different, however, for the parking lot. The court acknowledged that the Fifth Circuit has, in an unpublished decision, upheld the same regulation that is at issue here as applied to a parking lot. *Id.* at 6 [Aplt. App. A920] (citing *United States v.*

*Dorosan*, 350 F. App'x 874 (5th Cir. 2009) (unpub.)).  But the court concluded that the distinctions between the parking lot at issue here and the one at issue in the Fifth Circuit case had constitutional significance.  In particular, while the Avon parking lot has "mailboxes . . . that patrons may use to drop off mail while driving through," the parking lot at issue in the Fifth Circuit litigation was "regularly used by Postal Service employees for processing high volumes of mail via [U.S. Postal Service] mail trucks."  *Id.* The court also considered it significant that "there are no restrictions on access to the Avon Post Office parking lot beyond a sign posted at the front of the lot limiting parking to 30 minutes, which is not meaningfully enforced," and "there is little to distinguish the [Postal Service] parking lot from other public parking lots in the near vicinity."  *Id.*  In the Fifth Circuit case, by contrast, the parking lot was "enclosed by a gate, with a sign on both entrances warning that vehicles entering the lot were subject to search."  *Id.* (citing *United States v. Dorosan*, No. 08-042, 2008 WL 2622996, at *1 (E.D. La. June 30, 2008)).

     The court further observed that government business is not performed in the parking lot, as distinguished from the building, and that the parking lot is not a place where a lot of people congregate.  The court

reasoned that "while patrons may reasonably expect that the Postal Service will take measures to keep the parking lot safe, that expectation is less compelling than the expectation of safety inside the building, where the [U.S. Postal Service] does business and exercises greater control." *Id.* at 7 [Aplt. App. A921].

The district court rejected the government's contention, supported by a declaration, that "postal parking lots in general have been targeted by criminals seeking to steal valuable mail from patrons" and "used by criminals for drug trafficking transactions." *Id.* The district court faulted the government for not presenting evidence "showing that this particular parking lot has been the site of such activity." *Id.*

Having concluded that the regulation as applied to the parking lot was not entitled to a presumption of validity, the court determined that the government must demonstrate that the regulation is substantially related to the objective of preserving and promoting public safety. The court accepted the government's contention that it had a substantial interest in promoting public safety. *Id.* at 8 [Aplt. App. A922]. But the court rejected as "broad, conclusory statements" the government's declaration describing

the history of gun violence in Postal Service parking lots and the rationale for the regulation at issue here.  *Id.*

The court noted that Bonidy is law-abiding and has the relevant state and local permissions to carry a gun, and that the Postal Service regulation "makes no accommodation for him and his circumstances by, for example, delegating authority to the Avon Postmaster to issue a permit for a person with a concealed carry permit to use the parking lot with the gun in a locked vehicle concealed in a glove compartment or console." *Id.* at 10 [Aplt. App. A924].  The court concluded that the regulation is unconstitutional as applied to Bonidy, and ordered the government to "take such action as is necessary to permit Tab Bonidy to use the public parking lot adjacent to the Avon Post Office Building with a firearm authorized by his Concealed Carry Permit secured in his car in a reasonably prescribed manner." *Id.* at 11 [Aplt. App. A925].

Both sides have appealed.  This opening brief addresses the government's argument that the district court erred in concluding that the regulation is unconstitutional as applied to the parking lot.

## SUMMARY OF ARGUMENT

The Supreme Court has concluded that the Second Amendment provides a right for law-abiding citizens to possess firearms in the home for purposes of self-defense, but has repeatedly emphasized that its Second Amendment holding should not be construed to call into question a range of other firearms regulations that do not intrude on that right.  The Court explicitly stressed that its decisions should not cast doubt on longstanding regulations on the possession of firearms in sensitive places such as schools and government buildings.

Following the Supreme Court's precedent, this Court and other courts of appeals have upheld various firearms regulations that focus on particular areas of concern, including the categories of people who may possess firearms, the manner in which firearms may be carried, and, most relevant here, the places where firearms are permitted.  These decisions echo nineteenth-century cases from state courts construing the Second Amendment and its state analogues, which likewise readily upheld restrictions on the location and manner in which firearms may be possessed.

Here, plaintiffs challenge a longstanding regulation that prohibits the possession of firearms on property owned by the United States Postal Service. The district court properly recognized that the Supreme Court has expressly stated that the Second Amendment right to possess firearms does not extend to government buildings, and thus properly rejected Bonidy's claimed right to bring a firearm into the post office building.

The court erred, however, in ascribing constitutional significance to the distinction between the Post Office building and the adjacent parking lot. In both parts of the government's property, the United States has a responsibility for, and a substantial interest in, preserving public safety and ensuring that postal property remains fit for the purposes it serves. And in neither case does the regulation present any obstacle to the possession of a firearm in the home for self-defense. The Second Amendment has no application to the regulation at issue here.

Even if the regulation were thought to implicate the Second Amendment, the regulation readily satisfies any plausibly relevant level of scrutiny. The government's interest in preserving public safety on government property is beyond dispute, and a restriction on firearms bears a plain and direct relationship to the accomplishment of that objective. The

government provided detailed evidence of the reasons that the Postal

Service's firearms restriction needed to encompass the parking lot, which

the district court had no basis for second-guessing.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's grant of summary

judgment. *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013).

## ARGUMENT

## BONIDY HAS NO SECOND AMENDMENT RIGHT TO BRING A WEAPON ONTO GOVERNMENT PROPERTY

**A.    The right protected by the Second Amendment does not extend to government property.**

Both the Supreme Court and this Court have made clear that the

Second Amendment right is subject to limitations, and that the Second

Amendment does not preclude reasonable government regulations in a

variety of areas.  Regulations like the one at issue here, which protect

government property and do not intrude on the right to self-defense within

the home, do not implicate the Second Amendment.

**1.    The Supreme Court's cases addressed only the right to bear arms for purposes of self-defense in the home.**

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme

Court held that the Second Amendment protects an individual's right to

13

bear arms for purposes of self-defense in the home. The Court thus

invalidated a District of Columbia statute that the Court characterized as

an "absolute prohibition of handguns held and used for self-defense in the

home." *Id.* at 636.

The Court made explicit, however, that "the right secured by the

Second Amendment is not unlimited." *Id.* at 626. The Court noted that

over the course of history, "commentators and courts routinely explained

that the right was not a right to keep and carry any weapon whatsoever in

any manner whatsoever and for whatever purpose." *Id.* "For example, the

majority of the 19th-century courts to consider the question held that

prohibitions on carrying concealed weapons were lawful under the Second

Amendment or state analogues." *Id.*

The Court went on to state that "nothing in [its] opinion should be

taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons and the mentally ill, or laws forbidding the carrying of

firearms in sensitive places such as schools and government buildings, or

laws imposing conditions and qualifications on the commercial sale of

arms." *Id.* at 626–27. The Court further noted that it "identif[ied] these

presumptively lawful regulatory measures only as examples; [the] list does not purport to be exhaustive." *Id.* at 627 n.26.

In *McDonald v. City of Chicago, Illinois*, 130 S. Ct. 3020 (2010), the Supreme Court considered a Chicago ordinance that, like the D.C. provision at issue in *Heller*, "effectively bann[ed] handgun possession by almost all private citizens who reside in the City." *Id.* at 3026. The Court concluded that the right recognized in *Heller* was incorporated against the states. In so doing, a plurality of the Court again discussed the scope of the Second Amendment right. *Id.* at 3047 (Alito, J., joined by Roberts, C.J., and Scalia and Kennedy, JJ.).[1] The plurality opinion rejected the City's reliance on "a variety of state and local firearms laws that courts have upheld," noting "the paucity of precedent sustaining bans comparable to those at issue [in *McDonald*] and in *Heller*." *Id.* But the plurality reiterated the point from *Heller* "that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever

---

[1] Because Justice Thomas's analysis of the reasons for incorporation of the right against the states was different from the plurality's, he did not join this part of the plurality opinion. *See id.* at 3058 (Thomas, J., concurring in part and concurring in the judgment). Justice Thomas's separate opinion did not discuss the scope of the Second Amendment right.

purpose.'" *Id.* (quoting *Heller*, 554 U.S. at 626). And the plurality further

noted that the Court "made it clear in *Heller* that [its] holding did not cast

doubt on . . . longstanding regulatory measures" including, as most

relevant here, "'laws forbidding the carrying of firearms in sensitive places

such as schools and government buildings.'" *Id.* (quoting *Heller*, 554 U.S. at

626). The plurality continued: "We repeat those assurances here. Despite

municipal respondents' doomsday proclamations, incorporation does not

imperil every law regulating firearms." *Id.*

　　　Thus, far from providing an unlimited right to bear arms, the

Supreme Court has not provided a definitive answer to "the question of

whether . . . the Second Amendment right recognized in *Heller* applies

outside the home" at all. *United States v. Masciandaro*, 638 F.3d 458, 474 (4th

Cir. 2011). This Court need not resolve in this appeal whether the Second

Amendment has any application outside the home. Regardless of whether

the government has unfettered authority to regulate outside the home, as

discussed above, the Court's decisions make clear that the government

retains significant regulatory discretion so long as it is not impinging on

the right to bear arms in the home for self-defense. The regulation at issue

here falls comfortably within that authority.

**2.     Courts of appeals have recognized the validity of
various firearms restrictions that do not prevent law-
abiding citizens from possessing firearms in the home.**

Since the Supreme Court's recent Second Amendment decisions, the

courts of appeals, including this Court, have recognized limits on the

Second Amendment right.  "The right to bear arms, however venerable, is

qualified by what one might call the 'who,' 'what,' 'where,' 'when,' and

'why.'"  *United States v. Huitron-Guizar*, 678 F.3d 1164, 1166 (10th Cir. 2012).

This Court has thus concluded that "the Second Amendment does

not confer a right to carry concealed weapons."  *Peterson v. Martinez*, 707

F.3d 1197, 1211 (10th Cir. 2013).  This conclusion echoes the Supreme

Court's recognition in *Heller* that "'the majority of the 19th-century courts

to consider the question held that prohibitions on carrying concealed

weapons were lawful under the Second Amendment or state analogues.'"

*Id.* at 1210 (quoting *Heller*, 554 U.S. at 626).

Similarly, this Court upheld federal legislation prohibiting convicted

felons from possessing firearms.  *See United States v. McCane*, 573 F.3d 1037

(10th Cir. 2009).  Although "the Second Amendment provides an

individual with a right to possess and use a handgun for lawful purposes

within the home," the "Supreme Court . . . explicitly stated in *Heller* that

'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'"  *Id.* at 1047 (quoting *Heller*, 554 U.S. at 626).

Other courts of appeals have similarly upheld these and other restrictions that do not intrude on the ability of law-abiding citizens to possess firearms in the home for purposes of self-defense, and this Court has cited several of those cases with approval.  *See Huitron-Guizar*, 678 F.3d at 1166 (citing cases involving guns with obliterated serial numbers, possession by juveniles, and use of weapons in connection with criminal activities).

###    3.    State courts have recognized the validity of firearms restrictions in particular locations.

The recent federal cases upholding a variety of firearms restrictions echo nineteenth-century state cases analyzing the Second Amendment and state analogues.  As those decisions explain, the government retains authority to impose firearms restrictions "as is necessary for the preservation of the peace, the protection of the person and property of the citizens, and the fulfillment of [its] other constitutional duties."  *Hill v. State*, 53 Ga. 472, 482–83 (1874).  Accordingly, "the right to keep and bear

arms is not infringed if the exercise of it be by law prohibited at places and times when a proper respect for the majesty of the law, a sense of decency and propriety, or the danger of a breach of the peace, forbid it." *Id.* at 479.

State courts have thus readily upheld prohibitions on firearms in a wide variety of public and private settings. For example, the Texas Supreme Court upheld an 1871 statute that prohibited carrying firearms in specified places including churches, religious assemblies, school rooms, or "other place[s] where persons are assembled for amusement or for educational or scientific purposes." *See English v. State,* 35 Tex. 473 (1871) (upholding Act of Apr. 12, 1871, ch. 34, 1871 Tex. Gen. Laws 25-26). The Texas Supreme Court considered it "little short of ridiculous, that any one should claim the right to carry upon his person any of the mischievous devices inhibited by the statute, into a peaceable public assembly." *Id.* at 478. Similar provisions applicable to various public places in other states were likewise not thought to offend the right to bear arms. *See id.* at 479 ("It is safe to say that almost [all], if not every one of the states of this Union have a similar law upon their statute books, and, indeed, so far as we have been able to examine them, they are more rigorous than the act under consideration."); *Hill,* 53 Ga. 472 (upholding Act of Oct. 18, 1870, No.

285, 1870 Ga. Laws 421, which prohibited firearms at courts, election grounds, and "any other public gathering"); *State v. Shelby*, 2 S.W. 468, 469 (Mo. 1886) (noting that Missouri Supreme Court had upheld statute that prohibited firearms at a number of places including "any school-room or place where people are assembled for educational, literary, or social purposes").

A government was not thought to infringe the right to bear arms unless it enacted a "statute which, under the pretense of regulating, amounts to a destruction of the right" to bear arms. *State v. Wilforth*, 74 Mo. 528, 530 (1881). While some states concluded that the government lacked authority to enact broad prohibitions on public possession that bordered on an absolute ban, even those states did not call into question regulations restricting the possession of firearms in particular delineated locations. *See, e.g.*, *Wilson v. State*, 33 Ark. 557, 560 (1878) (striking down prohibition on wearing or carrying firearms in virtually any public place, but acknowledging that "[n]o doubt in time of peace, persons might be prohibited from wearing war arms to places of public worship, or elections, etc.").

### 4.    The restriction at issue here does not infringe upon the right protected by the Second Amendment.

This case concerns a prohibition on firearms possession on a particular type of government property: property owned by the United States Postal Service.  The regulation is far removed from the broad prohibitions that were at issue in *Heller* and *McDonald*, and much more akin to the regulations that the Supreme Court has recognized as valid: "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."  *Heller*, 554 U.S. at 626; *McDonald*, 130 S. Ct. at 3047 (plurality opinion).

Firearms regulations on government property serve important public-safety functions.  The government has an unquestioned interest in securing its property and ensuring that it is suitable for the function to which it is put.  On postal property in particular, patrons depend upon the government to maintain security during their entire visit to the Post Office and its parking lot.  Unlike on public streets, on postal property, the United States Postal Service has taken responsibility for the safety of members of the public.  *See* Milke Decl. ¶ 16 [Aplt. App. A89] ("Chief among the responsibilities of the [U.S. Postal] Inspection Service is the enforcement of

over 200 federal laws through investigations and prosecution of crimes that may adversely affect or fraudulently use the U.S. Mail, the postal system, or postal employees."); *see also* 18 U.S.C. § 3061(c) (providing authority for Postal Service employees to protect postal property); *see also Masciandaro*, 638 F.3d at 473 ("The government, after all, is invested with 'plenary power' to protect the public from danger on federal lands under the Property Clause." (citing U.S. Const. art. IV, § 3, cl. 2)).

As the Fifth Circuit explained in upholding the very regulation at issue here, the Postal Service's "restrictions on guns stemmed from its constitutional authority as the property owner," and "[t]his is not the unconstitutional exercise of police power that was the source of the ban addressed in *Heller*." *United States v. Dorosan*, 350 F. App'x 874, 875 (5th Cir. 2009) (unpub.). The regulation does not purport to regulate firearms in public places generally, but simply constitutes the permissible exercise of authority to issue regulations ancillary to the proper carrying out of governmental functions. *Cf. Adderley v. Florida*, 385 U.S. 39, 47 (1966) ("The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.").

Prohibitions on firearms on government property do not entrench on the core Second Amendment right to self-defense within the home. And to the extent, if any, that the Second Amendment right extends outside the home, restrictions in government parking lots do not curtail that right in any greater sense than restrictions that the Supreme Court has specifically accepted as presumptively valid, such as restrictions in government buildings or on other types of property such as schools.[2] The regulation at issue here thus does not implicate the Second Amendment.

### 5. Neither the distinction between the Post Office building and the adjacent parking lot nor the distinction between this postal parking lot and other postal parking lots has constitutional significance.

The district court properly recognized that Bonidy has no right to bring his gun into the post office. *See* SJ Op. 5 [Aplt. App. A919]. The district court erred, however, in failing to apply the same reasoning to the adjacent parking lot.

---

[2] The Supreme Court's specific mention of government "buildings" in no way carries a negative implication regarding other government property; to the contrary, the Supreme Court expressly noted that its list of permissible regulations "d[id] not purport to be exhaustive." *Heller*, 554 U.S. at 627 n.26.

The district court did not question the government's responsibility to keep customers safe in the parking lot, acknowledging that "patrons may reasonably expect that the Postal Service will take measures to keep the parking lot safe." *Id.* at 7 [Aplt. App. A921]. There is no reason to distinguish that government responsibility from the government's similar responsibility to preserve order and safety within the building, or in parking lots at other postal facilities.

Seeking to draw such distinctions, the district court concluded that the postal patron's expectation of safety is more "compelling" within the building than in the adjoining parking lot, *id.*, and that differences between the parking lot at issue here and the parking lot at issue in *Dorosan*, as to which the Postal Service's regulation was upheld, have constitutional significance, *see id.* at 6 [Aplt. App. A920]. The court explicitly faulted the Postal Service for considering the dangers inherent in Postal Service parking lots generally, demanding specific evidence "showing that this particular parking lot has been the site of [criminal] activity." *Id.* at 7 [Aplt. App. A921].

There is no basis in logic or precedent for drawing such fine distinctions or for requiring the government to defend each individual

application of a generally valid provision.  To the contrary, the Supreme

Court's decisions in *Heller* and *McDonald* did not contemplate endless

litigation of firearms restrictions depending on the precise context in which

they were applied.  *See Masciandaro*, 638 F.3d at 475 (expressing concern

over "all sorts of litigation over schools, airports, parks, public

thoroughfares, and various additional government facilities").

   As noted above, the Supreme Court took pains to emphasize that its

decisions should not call into question every firearms-related statute and

regulation, no matter how far removed from the right to possess firearms

for self-defense within the home.  *See, e.g.*, *McDonald*, 130 S. Ct. at 3047

(plurality opinion) ("Despite municipal respondents' doomsday

proclamations, incorporation does not imperil every law regulating

firearms.").  The suggestion that every application of firearms restrictions

on government property must be specifically justified flies in the face of the

Supreme Court's assurance that longstanding regulatory measures will be

presumed to be valid.  *See Heller*, 554 U.S. at 626–27.

   The district court cited two cases in support of its conclusion that

parking lots were meaningfully distinguishable from buildings: a district-

court decision in Delaware and a single line in a now-vacated Ninth Circuit

opinion.  *See* SJ Op. 7 [Aplt. App. A921] (citing *Doe v. Wilmington Hous. Auth.*, 880 F. Supp. 2d 513, 532 (D. Del. 2012); *Nordyke v. King*, 563 F.3d 439, 459–60 (9th Cir. 2009), *vacated*, 611 F.3d 1015 (9th Cir. 2010)).  Although neither case has precedential value or any particular relevance, if anything, they undercut the district court's conclusion here.

The Delaware district-court case did not decide whether common areas of a public housing project were "sensitive places" as that term was used in *Heller*, instead concluding that in any event a prohibition on handguns in those areas was permissible even if intermediate scrutiny applied.  *Wilmington Hous. Auth.*, 880 F. Supp. 2d at 532.

The now-vacated Ninth Circuit decision considered whether an ordinance that extended to "open space venues, such as County-owned parks, recreational areas, historic sites, parking lots of public buildings and the County fairgrounds" was limited to "sensitive places."  *Nordyke*, 563 F.3d at 460 (internal quotation marks and ellipsis omitted).  Although the court stated that "the only one of these that seems odd as a 'sensitive place' is parking lots," it ultimately concluded that "the open, public spaces the County's Ordinance covers fit comfortably within the same category as schools and government buildings."  *Id.*

To the extent that they are relevant at all, these two cases reinforce the artificial nature of the distinction drawn by the district court between government buildings and other government property. The regulation at issue here serves an important public-safety function and steers far clear of the right to possess firearms in the home, and thus raises no Second Amendment concern.

**B.**     **If the Second Amendment applied, the Postal Service regulation would satisfy any plausibly relevant level of scrutiny.**

Even if the regulation at issue here were thought to implicate the Second Amendment, it would readily satisfy any plausibly relevant level of scrutiny. For the reasons cited above, the regulation at issue here should not be subject to any form of heightened scrutiny. At a minimum, the fact the regulation at issue here applies not to the public generally but only to those who come on to the government's property suggests that the regulation should be viewed deferentially. But in any event, firearms regulations applicable to the public generally are subject, at most, to intermediate scrutiny, a standard the regulation at issue here readily satisfies.

1.    **The regulation advances the government's substantial interest in protecting public safety.**

Although the district court purported to subject the regulation to intermediate scrutiny, the court did not properly apply that standard. Under intermediate scrutiny, "'the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective.'" *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)). The district court properly acknowledged that the Postal Service's "objective in preserving and promoting public safety in the Avon Post Office parking lot is important." SJ Op. 8 [Aplt. App. A922]. Thus, the only question is "whether the . . . Regulation is substantially related to that objective." *Id.*

It should be beyond dispute that a prohibition on firearms in Postal Service parking lots is "substantially related" to the Postal Service's objective of preserving and promoting public safety in those parking lots. In district court, the government bolstered that common-sense conclusion with a detailed declaration from the Inspector in Charge of Security and Crime Prevention for the United States Postal Inspection Service.

As the declaration explained, "[c]riminals frequently target the
United States Postal Service because of the valuable information and
property contained in or transmitted through the mail."  Milke Decl. ¶ 16
[Aplt. App. A89].  Such crime is not limited to the post office buildings:
"Customer parking lots . . . are subject to criminal activity involving postal
customers," including both crimes perpetrated against "customers
returning to their vehicles with valuables obtained through the U.S. Mail"
and crimes related to "the increased use of the U.S. Mail to conduct drug
trafficking and the ability of criminals to track movements of shipments
and target letter carriers departing for delivery."  *Id.* ¶¶ 47–49 [Aplt.
App. A99].  Supporting those statements, the declaration provided specific
examples of incidents involving firearms in Postal Service parking lots.  *Id.*
¶ 48 [Aplt. App. A99].

The regulation at issue here is central to the Postal Service's efforts to
combat these crimes and ensure a safe environment for postal patrons and
employees.  "Allowing storage of weapons in Postal Service parking lots
would increase security risks and undermine law enforcement authority by
making firearms accessible to individuals with criminal intent" who may
either "use vehicles as temporary storage during commission of a crime" or

target "firearms stored in vehicles parked on Postal Service property [that] are improperly secured and become the target of theft." *Id.* ¶ 46 [Aplt. App. A98]. In addition, "if the firearm ban does not cover the full perimeter of Postal Service property, there would be no authority to apprehend" individuals seen entering the property with a firearm "before they enter the inside of a postal facility, placing the Inspectors, postal employees, customers, and bystanders at greater risk." *Id.* ¶ 46 [Aplt. App. A98]. Thus, "[a]ny change to" the policy prohibiting firearms on all postal property "would require a major reassessment of security resources, likely requiring significant additional security personnel and equipment to maintain adequate levels of security." *Id.* ¶ 31 [Aplt. App. A94–95].

Without further explanation, the district court discounted the government's submission as "broad, conclusory statements." SJ Op. 8 [Aplt. App. A922]. The district court likewise rejected the Postal Service's determination that a clear, nationwide policy was warranted, instead insisting that the Postal Service draw distinctions among postal facilities and among postal patrons. *Id.* at 10 [Aplt. App. A924]. In particular, the district court suggested, in the name of intermediate scrutiny, that the Postal Service was required to consider the specific circumstances of Mr.

Bonidy and his particular post office, and devise a regime wherein individual Postmasters would issue "a permit for a person with a concealed carry permit to use the parking lot with the gun in a locked vehicle concealed in a glove compartment or console." *Id.*

Intermediate scrutiny does not demand anything like the specific tailoring to each individual patron and each individual parking lot that the district court required. As this Court has recognized, "general laws deal in generalities." *Huitron-Guizar*, 678 F.3d at 1170. In a Second Amendment challenge to a prohibition on the possession of firearms by unlawfully present aliens, this Court concluded that Congress could reasonably determine "that unlawfully present aliens, as a group, pose a greater threat to public safety." *Id.* This Court thus "easily" upheld a blanket prohibition on possession of guns by unlawfully present aliens, even as applied to an alien who was "carried across the border as a toddler." *Id.* at 1169–70. The Court held that "courts must defer to Congress as it lawfully exercises its constitutional power to distinguish between citizens and non-citizens, or between lawful and unlawful aliens, and to ensure safety and order." *Id.* at 1170.

Similarly, the Supreme Court upheld a First Amendment challenge to a blanket prohibition on putting nonstamped mailable matter in mailboxes. *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114 (1981). The Court explained that "Congress may, in exercising its authority to develop and operate a national postal system, properly legislate with the generality of cases in mind, and should not be put to the test of defending in one township after another the constitutionality of a statute . . . ." *Id.* at 132–33.

Here, the Postal Service did not rely on broad generalizations, but instead specifically documented the dangers associated with allowing firearms on postal property, and in postal parking lots in particular. The Postal Service thus amply defended its conclusion that firearms in postal facilities, "as a group, pose a . . . threat to public safety," *see Huitron-Guizar*, 678 F.3d at 1170, and its regulation on that basis was eminently reasonable. To require a particularized showing of the appropriateness of every application would be tantamount to subjecting the Postal Service regulation to strict scrutiny, a standard that the district court properly did not consider applicable and that has never been applied to any remotely comparable regulation. *See, e.g., Reese*, 627 F.3d at 801–02 (applying

intermediate scrutiny to statute prohibiting possessing a firearm while subject to a domestic protection order, and citing cases applying intermediate scrutiny to other firearms regulations).

On the other side of the ledger, it is undisputed that the regulation presents no obstacle to Bonidy's ability to own a gun, to keep it at home, and to carry it in most public places. And even the district court's limited characterization of the burden placed on Bonidy was unsupported in the record. Although the district court stated that "[b]ecause of the firearms restriction, Mr. Bonidy has an employee pick up and deliver his mail at the Avon Post Office," SJ Op. 3 [Aplt. App. A917], Bonidy's own deposition refutes that assertion. Bonidy testified that he previously picked up his own mail, but stopped "[b]ecause [he] got an administrative assistant." Bonidy Dep. 51 [Aplt. App. A467]. When asked if there was "[a]ny other reason," he said "No." *Id.* And Bonidy testified that when his assistant is not available, he goes to the post office himself and simply parks somewhere other than in the post office parking lot. *See id.* at 52 [Aplt.

App. 467].[3]  The record thus demonstrates that the firearms restriction does

not deter Bonidy from going to the post office himself, or prevent him from

carrying his firearm throughout the rest of his day before and after visiting

the postal facility.

The fact that Bonidy can park at other nearby locations and walk to

the post office underscores that the government restriction at issue here

affects only Bonidy's ability to park his car, with a firearm in it, in the post

office parking lot instead of a short distance away, which can hardly be

analogized to the core right to self-defense within the home recognized in

the *Heller* decision.  This limited restriction is plainly related to the

government's interest in public safety on the government's own property,

and readily satisfies intermediate scrutiny.

> **2.      Other courts of appeals have recognized the validity of
> analogous regulations.**

Other courts of appeals have upheld statutes addressing the

possession of firearms in public places under intermediate scrutiny.  For

example, the Second and Fourth Circuits have upheld prohibitions on

---

[3] The record contains evidence of numerous other available public
parking places.  *See* Padilla Decl. ¶¶ 2–3 [Aplt. App. A762–63]; Padilla-1,
Aerial Photographs of Avon [Aplt. App. A765–68].

carrying guns in public by those who cannot make an individualized showing of good cause for needing to do so. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013); *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), *cert. denied*, 2013 WL 3479421 (U.S. Oct. 15, 2013).

Similarly, the Fourth Circuit upheld a regulation that prohibited possessing a loaded weapon in a motor vehicle in a national park area. *See Masciandaro*, 638 F.3d at 460. The court concluded "that the government has a substantial interest in providing for the safety of individuals who visit and make use of the national parks." *Id.* at 473. In fact, "[a]lthough the government's interest need not be 'compelling' under intermediate scrutiny, cases have sometimes described the government's interest in public safety in that fashion." *Id.* The court also reasoned that the prohibition at issue was "reasonably adapted to that substantial government interest," given the dangers of loaded firearms and the reasonableness of concluding that "when concealed within a motor vehicle, a loaded weapon becomes even more dangerous." *Id.*

Here, the district court concluded that the Second Amendment requires the government to permit Bonidy to possess a concealed weapon

in a motor vehicle.  Bonidy's desire to conceal his weapon in a car on

government property—although he has no constitutional right to conceal it

on his person, *see Peterson*, 707 F.3d at 1211—cannot override the

government's interest in protecting public safety for all employees and

patrons of the U.S. Postal Service.

The district court's reliance on *Moore v. Madigan*, 702 F.3d 933 (7th

Cir. 2012), underscores the error of its analysis.  There, a divided Seventh

Circuit panel struck down an Illinois statute that, with limited exceptions

for police and other specific categories of people, made it illegal "to carry a

gun ready to use (loaded, immediately accessible—that is, easy to reach—

and uncased)" other than on a person's own property, at home, or at a

fixed place of business.  *Id.* at 934.  The statute also generally prohibited

carrying an unloaded gun in public if the firearm and its ammunition

would be immediately accessible.  *Id.*

Regardless of whether the Seventh Circuit properly analyzed the

broad statute at issue in *Moore*, its analysis confirms the constitutionality of

the regulation at issue here.  The court explicitly contrasted the broad

prohibition at issue in that case with the narrower provision considered by

the Second Circuit in *Kachalsky*.  *See id.* at 941.  The court also distinguished

36

circumstances in which "a state bans guns merely in particular places, such as public schools," because there "a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state doesn't need to prove so strong a need."  *Id.* at 940.  And instead of invalidating the regulation immediately, the court stayed its mandate for 180 days to allow the state legislature to craft a more narrow restriction, thus highlighting the ability to regulate in this area.  *Id.* at 942.

The decision in *Moore* thus expressly contemplated, in a number of ways, narrower regulations like the one at issue here.  And as discussed above, other Circuits have upheld various regulations on the possession of firearms in public places.  The regulation at issue here easily withstands intermediate scrutiny.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be reversed insofar as it invalidated the Postal Service regulation as applied

to the Avon Post Office parking lot.

Respectfully submitted,

STUART F. DELERY
  *Assistant Attorney General*

JOHN F. WALSH
  *United States Attorney*


 s/ Daniel Tenny

MICHAEL S. RAAB

DANIEL TENNY
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

NOVEMBER 2013

## ORAL ARGUMENT STATEMENT

The district court struck down a 1972 regulation of the United States Postal Service as unconstitutional as applied to the Avon Post Office parking lot. The government respectfully requests oral argument to present its arguments in support of the constitutionality of a duly promulgated and longstanding regulation.

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

I certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B).  This brief contains 7,311 words.


s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2013, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the Tenth Circuit by using the appellate CM/ECF system.

Participants in the case are registered CM/ECF users and service will be

accomplished by the appellate CM/ECF system.

s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that:

1.  All required privacy redactions have been made.

2.  The hard copies to be submitted will be exact copies of the

electronically filed version of this brief.

3.  This brief was scanned for viruses using the following software:

Microsoft Forefront Endpoint Protection 2010
Virus definition version 1.163.192.0
Updated 11/20/2013

                                        s/ Daniel Tenny_____
                                        Daniel Tenny

ADDENDUM

DISTRICT COURT
MEMORANDUM OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 10-cv-02408-RPM

TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

      Plaintiffs,

      v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
MICHAEL KERVIN, Acting Postmaster, Avon, Colorado,

      Defendants. [1]

_____

## MEMORANDUM OPINION AND ORDER
_____

      The United States Postal Service ("USPS") was established to "provide prompt, reliable, and efficient services to patrons in all areas," 39 U.S.C. § 101(a), and, to that end, "establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will . . . have ready access to essential postal services," *id.* § 403(b). Congress empowered the United States Postmaster General to prescribe regulations necessary for the protection of property owned or occupied by the USPS and persons on the property, and to include reasonable penalties for violations thereof. 18 U.S.C. § 3061(c)(4)(A-B).

---

[1] The National Association for Gun Rights ("NAGR") has joined Mr. Bonidy, an NAGR member himself, in its representative capacity. The USPS officials are sued in their official capacities.

In 1972, the Postal Service enacted 39 C.F.R. § 232.1(*l*) ("USPS Regulation"), which

provides:

> Weapons and explosives. Notwithstanding the provisions of any other law, rule or regulation, no person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.

A violation of this regulation may result in a fine, imprisonment up to thirty days, or both.

*Id.* § 232.1(p)(2).[2]

Tab Bonidy brought this civil action for declaratory and injunctive relief claiming that

applying the USPS Regulation to him, by prohibiting him from carrying a concealed

handgun when he picks up and deposits mail at the Post Office in Avon, Colorado, infringes

upon his freedom to bear arms guaranteed by the Second Amendment to the United States

Constitution.  After full discovery, both Plaintiffs and Defendants have moved for summary

judgment.  The relevant facts are not in dispute.

The Town of Avon, population 6,365, is high in the Rocky Mountains of Colorado.

The Avon Post Office is a freestanding building, with a 57-space parking lot reserved for

Post Office patrons, and an employee parking lot behind the building.  There are five public

parking spaces in front of the Post Office on West Beaver Creek Boulevard.  Parking on that

street is prohibited when there are more than two inches of snow on the ground.

The Avon Post Office does not provide delivery services to the public.  It provides

free post office boxes in an area of the Post Office that is open to the public at all times.  The

mail service counter opens and closes on a regular schedule.  There are no security personnel

---

[2] The USPS Regulation was enacted along with a number of other prohibitions on conduct on Postal Service grounds, 37 Fed. Reg. 24346 (Nov. 16, 1972), including littering and damaging property (39 C.F.R. § 232.1(c)); causing disturbances (*id.* § 232.1(e)); smoking, drinking alcohol, and using controlled substances (*id.* § 232.1(g)); gambling (*id.* § 232.1(f)); and bringing non-service dogs and animals onto postal premises (*id.* § 232.1(j)).

or devices on the site.  Access to the area behind the mail service counter, the mail sorting area, and the employee parking lot is restricted.  Approximately 500 window customers are served at the Post Office each day it is in operation.

The parking lot adjacent to the Avon postal building is openly available to the public.  There is a sign at the front of the lot reading:  "US POSTAL PROPERTY / 30 MINUTE PARKING / VIOLATORS WILL BE TOWED AT OWNERS EXPENSE."  That time limit is not enforced.  There are two mailboxes in the lot for customers to drop off outgoing mail while driving through.

Tab Bonidy lives in a rural area and drives several miles from his home to the Avon Post Office to pick up mail from his free PO box in the open area of the building.  He routinely carries a concealed handgun, as authorized by the Sheriff of Eagle County under Colorado's Concealed Carry Act, C.R.S. § 18-12-201 *et seq*.  In July 2010, counsel for Mr. Bonidy sent a written inquiry asking if he would be prosecuted under the USPS Regulation if he carried his firearm into the Post Office or stored it in his vehicle in the public parking lot when picking up his mail.  Mary Ann Gibbons, General Counsel for the USPS, responded in the affirmative, stating that that "the regulations governing Conduct on Postal Property prevent [Mr. Bonidy] from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service. . . . There are limited exceptions to this policy that would not apply here."  [Doc. 33 at 9.]

Because of the firearms restriction, Mr. Bonidy has an employee pick up and deliver his mail at the Avon Post Office.

As required by controlling precedent, there are two questions to be asked in approaching Plaintiffs' Second Amendment claim.[3]   First, does the challenged regulation impose a burden on conduct falling with the scope of the Second Amendment guarantee?

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court freed the right to keep and bear arms from the restriction suggested by the prefatory clause that its purpose was to maintain a well-regulated militia in each of the several states.   The decision changed the view of the amendment as protecting a collective interest in participating in a military organization to protect the inhabitants of each state that had been prevailing in the courts since the Court's opinion in *United States v. Miller*, 307 U.S. 174 (1939).   Justice Scalia's majority opinion explained, in depth, the history of a common-law concept of an individual's freedom to use firearms for self-protection that the American colonists understood to be an essential element of individual liberty.   The Second Amendment protects that liberty from disarmament by those who exercise the coercive powers of government.

The Court recognized that there is a collective interest in public safety that trumps individual liberty in given circumstances.   Just as the liberty protected by the First and Fourth Amendments may be limited by restrictions necessary to preserve a well-ordered society, the freedom to keep and bear arms may be restrained by majoritarian governmental action.

When and how those restraints may be applied has been and will be the subject of extensive litigation.   In *Peterson,* 707 F.3d at 1201, the Tenth Circuit held that the scope of the Second Amendment's protection does not include a right to carry a concealed firearm outside the home.   That ruling is binding on this Court and defeats the Plaintiffs' contention

---

[3] *See Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) (citing *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010)).

that Mr. Bonidy should be free to carry his concealed handgun on his person in the Avon Post Office and parking lot. But the *Peterson* panel did not address whether open carry of firearms outside the home is similarly unprotected; indeed, it explicitly declined to do so. *See id.* at 1208-09.

Those who believe in the primacy of collective security read *Heller* narrowly within the factual context in which the case arose. *See* discussion as to Part III.B in *United States v. Masciandaro,* 638 F.3d 458 (4th Cir. 2011); *Piszczatoski v. Filko*, 840 F. Supp. 2d 813 (D. N.J. 2012). Judge Posner persuasively discredited that reading by his textual analysis in the opinion deciding *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). Aside from the textual meaning of "bear arms," he recognized the common-sense view that armed self-defense is important outside the home and that hunting takes place outside the home.

Accordingly, the Court concludes that the Second Amendment protects the right to openly carry firearms outside the home for a lawful purpose, subject to such restrictions as may be reasonably related to public safety.

In *Heller*, the Court recognized that there are many circumstances in which restrictions on the freedom to carry firearms are presumptively valid—including the exclusion of firearms from government buildings. *See* 554 U.S. at 626, 627 n.26. Those challenging such restrictions must present sufficient evidence to rebut that presumption. The Avon Post Office building is used for a governmental purpose by significant numbers of people, with no means of securing their safety; therefore, it is a sensitive place, and the USPS Regulation is presumed to be valid as applied to the building. Mr. Bonidy has failed to rebut that presumption of validity. Mr. Bonidy's claim to carry his gun into the building must therefore be denied.

There is no such easy answer as to the public parking lot. The Defendants first assert that USPS' ownership of the lot is, itself, a sufficient basis for the exclusion of firearms. But as the country's First Amendment jurisprudence demonstrates, constitutional freedoms do not end at the government property line. *See, e.g.*, *Initiative and Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299 (D.C. Cir. 2005) (subjecting 39 C.F.R. 232.1(h)(1) (1997), preventing people from political solicitation on USPS property, to First Amendment scrutiny). There is more to a sensitive place analysis than mere government ownership.

Next, Defendants point out that the Fifth Circuit upheld the precise regulation at issue here, after concluding that a USPS employee parking lot qualified as a sensitive place because "the Postal Service used the parking lot for loading mail and staging its mail trucks"; in other words, "as a place of regular government business." *United States v. Dorosan*, 350 Fed. App'x 874, 875 (5th Cir. 2009) (unpublished). This case is different. In terms of postal business being conducted in the parking lot, Defendants have offered evidence that there are mailboxes in the lot that patrons may use to drop off mail while driving through. But lone mail receptacles used by an undetermined number of transient patrons is easily distinguishable from the lot at issue in *Dorosan*, which was regularly used by Postal Service employees for processing high volumes of mail via USPS mail trucks. *See Dorosan*, 350 Fed. App'x at 875. In addition, there are no restrictions on access to the Avon Post Office parking lot beyond a sign posted at the front of the lot limiting parking to 30 minutes, which is not meaningfully enforced. As shown by the aerial photographs in the record, there is little to distinguish the USPS parking lot from other public parking lots in the near vicinity. By contrast, *Dorosan* involved a USPS employee parking lot that was enclosed by a gate, with a sign on both entrances warning that vehicles entering the lot were subject to search. *United*

*States v. Dorosan*, No. 08-042, 2008 WL 2622996, at *1 (E.D. La. June 30, 2008) (Knowles,

M.J.).  Therefore, *Dorosan*'s reasoning and facts are not helpful to Defendants' position.

Considering other indicia of sensitive places, an official, core government function is

not performed in the Avon Post Office parking lot; rather, except for the presence of a few

mailboxes, the lot merely facilitates the government function taking place inside by giving

patrons a place to park.  The government business done in the parking lot is thus not of the

"same extent or nature as that done in schools, post offices, and courthouses."  *Doe v.*

*Wilmington Housing Auth.*, 880 F. Supp. 2d 513, 532 (D. Del. 2012) (applying reasoning to

common areas of public housing).  Moreover, Defendants have offered no evidence that a

substantial number of people congregate or are present in the parking lot.  *Cf. Nordyke v.*

*King*, 563 F.3d 439, 459-60 (9th Cir. 2009) (noting parking lots of public buildings "[seem]

odd as a 'sensitive place,'" because they are not "places where high numbers of people might

congregate"), *vacated on other grounds by* 611 F.3d 1015 (9th Cir. 2010).  And while

patrons may reasonably expect that the Postal Service will take measures to keep the parking

lot safe, that expectation is less compelling than the expectation of safety inside the building,

where the USPS does business and exercises greater control.

Defendants maintain that postal parking lots in general have been targeted by

criminals seeking to steal valuable mail from patrons as they walk out of post offices to their

cars [Doc. 31 at 12] and used by criminals for drug trafficking transactions [*id.* at 13].  They

fail to present evidence showing that this particular parking lot has been the site of such

activity.

Thus, the Avon Post Office parking lot is not a sensitive place, and there is accordingly no presumption that the USPS Regulation is a valid restriction on Mr. Bonidy's right to carry a firearm onto it.

It is, therefore, incumbent upon the USPS to show sufficient support for its absolute ban on firearms without any consideration of the possible accommodations that may lessen the burden on Mr. Bonidy's individual interest in self-protection. The USPS's objective in preserving and promoting public safety in the Avon Post Office parking lot is important. The question is whether the USPS Regulation is substantially related to that objective. *See Reese*, 627 F.3d at 802 (quoting *United States v. Williams*, 616 F.3d 685, 692 (10th Cir. 2010)).

Defendants rely on the Declaration of Keith Milke, Inspector in Charge of Security and Crime Prevention for the United States Postal Inspection Service. He recites a history of firearm violence on postal property based on a study of workplace violence, and makes broad, conclusory statements, including the following:

> 46. Allowing storage of weapons in Postal Service parking lots would increase security risks and undermine law enforcement authority by making firearms accessible to individuals with criminal intent, whether those individuals use vehicles as temporary storage during commission of a crime, or whether firearms stored in vehicles parked on Postal Service property are improperly secured and become the target of theft. Inspectors surveilling criminal suspects in the course of investigations may observe them entering property with firearms on their person or in their vehicle, but if the firearm ban does not cover the full perimeter of Postal Service property, there would be no authority to apprehend these suspects before they enter the inside of a postal facility, placing the Inspectors, postal employees, customers, and bystanders at greater risk.

> 47. Customer parking lots, as opposed to secured employee lots, are subject to criminal activity involving postal customers. Sometimes customers are the perpetrators of intentional gun violence, including firearm suicides committed in vehicles, as occurred in separate incidents in parking lots in Post Office locations in Florida in 2005 and 2011. Unintentional harm can also result from the storage of firearms in vehicles, however, and the Inspection Service is aware of at least one incidence of damage to Postal Service property in 2008 when a customer accidentally

discharged his concealed handgun while in his vehicle, shooting out the front window of a Post Office lobby in Henderson, Texas.

48. Where parking lot robberies occur, customers returning to their vehicles with valuables obtained through the U.S. Mail or retail postal services may be subject to predation from armed perpetrators surveilling the lot from their vehicles. For example, in 2006, occupants of a vehicle in a customer lot in Florida shot a customer returning to his car in the course of robbing him of the Postal Service money orders he had just purchased. In Louisiana (2005), Mississippi (2005), and Virginia (2004), customers have been robbed at gunpoint in parking lots, in some cases by acquaintances. In other cases, criminals may use Postal Service parking lots as a base to target customers and valuables of the U.S. Mail in more involved ways. Such an incident occurred in March, 2006, when a postal customer was kidnapped at gunpoint and ordered to enter the Mount Holly, North Carolina Post Office to collect a pay check scheduled to arrive in his Post Office Box while his kidnappers waited in a vehicle in the parking lot. The victim alerted the Postmaster, who immediately called 911 and cleared employees and customers away from the service window area. On a monitor in the Postmaster's office, one of the armed kidnappers was observed entering the Post Office lobby, looking for the victim. When local police arrived, the kidnapper attempted to dispose of his firearm in a lobby waste bin, was arrested without incident, and was later sentenced on state charges for Possession of a Firearm by a Convicted Felon.

49. In addition, Postal Service parking lots have become sites for criminal activity due to the increased use of the U.S. Mail to conduct drug trafficking and the ability of criminals to track movements of shipments and target letter carriers departing for delivery. See, e.g., John Ingold, *Colorado Post Offices See Increase in Marijuana Packages*, Denver Post (Feb. 28, 2012) (attached as Ex. Milke-12). ("Package tracking numbers offer the ability to keep an eye on the shipment [of marijuana]. [This] practice places letter carriers in potential jeopardy, . . . because they end up unwittingly carrying around packages that could be targets for robbers.").

[Doc. 31, Ex. A-1 at 15-16.]

The USPS contends that its Regulation must be uniform without any consideration of differences in persons or places because the Postal Inspection Service manages 30,000 facilities nationwide and has made an executive policy decision that the Regulation is necessary, given the concerns cited above, to protect USPS employees and customers from firearm violence.  That may be a reasonable justification if this were an Administrative Procedure Act review attacking the Regulation as arbitrary and capricious.  What it ignores is

Mr. Bonidy's interest in protecting himself.   That is the core concern of the Second Amendment.

There is nothing in the Milke Declaration that the "one-size-fits-all" approach serves any purpose other than administrative convenience and saving expenses.   The fit between this approach and the USPS' public safety objective is unreasonable.   Presumably, a police officer could not pick up his personal mail without disarming himself before entering the parking lot at the Avon facility.   There is no recognized difference between this small-town, low-use postal facility and the post office in downtown Denver or midtown Manhattan.

In this case, specifically, Mr. Bonidy is a law-abiding individual who has demonstrated competency with a handgun, and has been approved by the Eagle County Sheriff to carry a concealed handgun almost everywhere in Colorado.   [Doc. 33 at 8; Doc. 34 at 8.]   And yet the USPS Regulation makes no accommodation for him and his circumstances by, for example, delegating authority to the Avon Postmaster to issue a permit for a person with a concealed carry permit to use the parking lot with the gun in a locked vehicle concealed in a glove compartment or console.     Instead, the Regulation broadly prohibits anyone, regardless of risk, from possessing firearms anywhere on USPS property.   When it comes to the building itself, a blanket firearms restriction applied to a law-abiding individual like Mr. Bonidy is sufficiently tailored, because the building is sensitive, and the presence of an individual openly carrying a firearm may excite passions, or excited passions may lead to the use of the firearm.   Someone could also attempt to take the firearm from its lawful carrier and use it for criminal purposes.

By contrast, prohibiting Mr. Bonidy from securely storing his firearm in his vehicle sweeps too far; the parking lot is not similarly sensitive, and the public safety concerns

associated with open carry in the building are not similarly implicated. Therefore, as applied to Mr. Bonidy and his request to use the parking lot with his gun securely stored in his car, the USPS Regulation is not substantially related to the government's public safety interest. It is an unconstitutional burden on Mr. Bonidy's freedom under the Second Amendment.

In sum, openly carrying a firearm outside the home is a liberty protected by the Second Amendment. The Avon Post Office Building is a sensitive place and the ban imposed by the USPS Regulation is a presumptively valid restriction of that liberty. The Plaintiff has failed to present evidence to rebut that presumption. The parking lot adjacent to the building is not a sensitive place and the Defendants have failed to show that an absolute ban on firearms is substantially related to their important public safety objective. The public interest in safety and Mr. Bonidy's liberty can be accommodated by modifying the Regulation to permit Mr. Bonidy to "have ready access to essential postal services" provided by the Avon Post Office while also exercising his right to self-defense. Accordingly, it is

ORDERED, that the Defendants take such action as is necessary to permit Tab Bonidy to use the public parking lot adjacent to the Avon Post Office Building with a firearm authorized by his Concealed Carry Permit secured in his car in a reasonably prescribed manner, and it is

FURTHER ORDERED, that the other claims of unconstitutionality of 39 C.F.R. § 232.1(*l*) made by Plaintiffs are denied.

Dated: July 9, 2013.

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge