[ORAL ARGUMENT IS REQUESTED]

**Nos. 13-1374, 13-1391**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

———————————

**TAB BONIDY, et al.,**

**Plaintiffs-Appellees,**

**v.**

**UNITED STATES POSTAL SERVICE, et al.,**

**Defendants-Appellants.**

———————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## SENIOR JUDGE RICHARD P. MATSCH
### Case No. 10-cv-2408

———————————

### RESPONSE/REPLY BRIEF FOR APPELLANTS/CROSS-APPELLEES

———————————

**STUART F. DELERY**
  *Assistant Attorney General*

**JOHN F. WALSH**
  *United States Attorney*

**MICHAEL S. RAAB**
**DANIEL TENNY**
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION AND SUMMARY ..................................................................1

ARGUMENT.................................................................................................3

A.      The *Heller* decision explicitly preserved the government's
         authority to prohibit firearms in government buildings.......................3

B.      The Postal Service has authority to preserve government
         property for the purposes to which it is dedicated ................................7

C.      Whether or not the Second Amendment applies outside the
         home, it does not provide a right to bring firearms onto
         government property .................................................................................10

D.      Plaintiffs misunderstand the relevant standard of review...................21

E.      The Second Amendment does not give plaintiffs license
         to second-guess the government's security policies .............................23

CONCLUSION .......................................................................................26

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 28.1(E)(2)

CERTIFICATE OF SERVICE

CERTIFICATE OF DIGITAL SUBMISSION

# TABLE OF AUTHORITIES

**Cases:**                                                                 <u>Page</u>

*Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson County*,
   492 F.3d 1164 (10th Cir. 2007)..............................................................23

*Adderley v. Florida*,
   385 U.S. 39 (1966) ...............................................................................7

*Bateman v. Perdue*,
   881 F. Supp. 2d 709 (E.D.N.C. 2012)................................................18

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962) .............................................................................22

*City of Las Vegas v. Moberg*,
   485 P.2d 737 (N.M. Ct. App. 1971) ...................................................13

*Del Gallo v. Parent*,
   557 F.3d 58 (1st Cir. 2009) ...................................................................8

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ..................................................... 2, 3, 4, 5, 6, 7, 18, 26

*Drake v. Filko*,
   724 F.3d 426 (3d Cir. 2013), *petition for cert. filed*,
   82 U.S.L.W. 3449 (U.S. Jan. 9, 2014) (No. 13-827) ..........................16

*English v. State*,
   35 Tex. 473 (1871) ..............................................................................11

*Greer v. Spock*,
   424 U.S. 828 (1976) ........................................................................8, 19

*Hague v. CIO*,
   307 U.S. 496 (1939) .............................................................................19

*Heller v. District of Columbia,*
　　670 F.3d 1244 (D.C. Cir. 2011) .......................................................21

*Hill v. State,*
　　53 Ga. 472 (1874) ...........................................................................11

*In re Brickey,*
　　70 P. 609 (Idaho 1902).....................................................................14

*Initiative & Referendum Institute v. U.S. Postal Serv.,*
　　685 F.3d 1066 (D.C. Cir. 2012) .........................................................8

*Jacobsen v. U.S. Postal Serv.,*
　　993 F.2d 649 (9th Cir. 1992)..............................................................8

*Kachalsky v. County of Westchester,*
　　701 F.3d 81 (2d Cir. 2012)........................................................ 15, 16

*Longo v. U.S. Postal Serv.,*
　　983 F.2d 9 (2d Cir. 1992)...................................................................8

*Lynch v. State,*
　　6 S.W. 190 (Tex. Ct. App. 1887).....................................................12

*McDonald v. City of Chicago, Ill.,*
　　130 S. Ct. 3020 (2010) ...................................................................2, 4

*Moore v. Madigan,*
　　702 F.3d 933 (7th Cir. 2012)............................................................17

*Paff v. Kaltenbach,*
　　204 F.3d 425 (3d Cir. 2000)...............................................................8

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
　　460 U.S. 37 (1983) .............................................................................7

*Peruta v. County of San Diego*,
 ___ F.3d ___, 2014 WL 555862 (9th Cir. Feb. 13, 2014) .......................... 17, 18

*Peterson v. Martinez*,
 707 F.3d 1197 (10th Cir. 2013)...........................................................9

*SEC v. Chenery Corp.*,
 332 U.S. 194 (1947) ......................................................................23

*State v. Wilforth*,
 74 Mo. 528 (1881)..........................................................................14

*United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*,
 453 U.S. 114 (1981) ......................................................................24

*United States v. Belsky*,
 799 F.2d 1485 (11th Cir. 1986)............................................................8

*United States v. Chester*,
 628 F.3d 673 (4th Cir. 2010)..............................................................22

*United States v. Chovan*,
 735 F.3d 1127 (9th Cir. 2013)............................................................22

*United States v. Huitron-Guizar*,
 678 F.3d 1164 (10th Cir. 2012)...........................................................24

*United States v. Kokinda*,
 497 U.S. 720 (1990) .......................................................................9

*United States v. Masciandaro*,
 638 F.3d 458 (4th Cir. 2011).......................................................... 14, 15

*United States v. McCane*,
 573 F.3d 1037 (10th Cir. 2009)............................................................4

*Woollard v. Gallagher,*
    712 F.3d 865 (4th Cir. 2013)...............................................................................16

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Nos. 13-1374, 13-1391

TAB BONIDY, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES POSTAL SERVICE, et al.,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE RICHARD P. MATSCH
Case No. 10-cv-2408

RESPONSE/REPLY BRIEF FOR APPELLANTS/CROSS-APPELLEES

## INTRODUCTION AND SUMMARY

Plaintiffs do not defend the district court's determination that the

Second Amendment analysis differs in the post office building and in the

adjacent parking lot. Instead, their argument on appeal relies on their

assertion that the government has no authority to prohibit firearms in the

post office building itself. The Supreme Court has repeatedly made clear

that its Second Amendment cases should not "be taken to cast doubt on . . .

laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3047 (2010) (plurality opinion). Plaintiffs' position cannot be squared with the Supreme Court's treatment of the precise issue presented in this case.

In addition to the Supreme Court's decisions directly on this point, the government's general authority to adopt reasonable regulations applicable to its own property is well established. Even in the First Amendment context, the government may regulate expressive activity on government property so long as the regulation is reasonable and does not reflect an effort to discriminate based on the speaker's viewpoint. And in the context of the right to bear arms in particular, plaintiffs have no answer to the long line of cases recognizing that states regularly restricted the locations in which firearms could be possessed. Plaintiffs cite no case in which any court has concluded that the government lacked authority to prohibit firearms at particular locations.

Unable to refute the basic propositions that control this case, plaintiffs devote much of their briefing to arguing that the Second Amendment applies outside the home. This case does not present that

question, as specifically stated in the government's opening brief. The cases addressing the government's authority to regulate firearms in public places more generally are relevant only insofar as none suggests that the government lacks authority to adopt more limited regulations of the type at issue here, specific to particular parcels of government property.

Plaintiffs do not advance their argument by expressing their disagreement with the Postal Service's security policies. The Second Amendment does not require the Postal Service to adopt particular security measures that plaintiffs might prefer. In any event, the Postal Service has amply justified its policies as currently formulated. Those policies, including the regulation at issue here, are a reasonable and constitutionally permissible means of protecting postal patrons, employees, and government property.

## ARGUMENT

### A. The *Heller* decision explicitly preserved the government's authority to prohibit firearms in government buildings.

Plaintiffs make no attempt to defend the distinction drawn by the district court between the parking lot and the post office building. Instead, they urge that the prohibition on firearms within the Avon Post Office itself

is unconstitutional. This assertion runs headlong into the Supreme Court's statement in *Heller*, repeated in *McDonald*, that "nothing in [its] opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3047 (2010) (plurality opinion).

This Court has treated the Supreme Court's statements as controlling with respect to the particular types of firearms restrictions enumerated in that Court's decisions. In *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), this Court relied on *Heller*'s discussion of presumptively lawful regulations to uphold a prohibition on the possession of firearms by convicted felons, without further discussion. *Id.* at 1047; *see also id.* at 1047–50 (Tymkovich, J., concurring) (accepting need to follow *Heller*'s direction and uphold presumptively lawful measures, despite having doubts about whether *Heller* assessed the particular measure correctly). The same approach is warranted here.

Plaintiffs go to considerable effort to demonstrate that the Avon Post Office is not a "sensitive place" as plaintiffs would define the term. *See* Pls.' Br. 32–37. But their analysis ignores the Supreme Court's guidance on

how that phrase should be interpreted. The Supreme Court provided two examples of "sensitive places": "schools" and "government buildings." *Heller*, 554 U.S. at 626. Although the Avon Post Office may not be characterized by "the predominate presence of children," which helps to justify the designation of schools as sensitive places, *see* Pls.' Br. 32, it is plainly a government building. However broadly or narrowly the term "sensitive place" may be interpreted with respect to property not owned and operated by the government, plaintiffs provide no basis for suggesting that a government facility itself does not qualify.

In fact, plaintiffs identify no case in which any property of any kind was held *not* to be a sensitive place. Instead, they seek to distinguish, on various grounds, cases in which property *has* been held to be a sensitive place. *See* Pls.' Br. 32–34. Plaintiffs do not dispute courts' treatment of a variety of locations—such as schools, universities, parks, and airplanes—as sensitive, further demonstrating the lack of support for plaintiffs' exceedingly narrow definition of the term. *See id.* (citing cases).

Plaintiffs are likewise mistaken to suggest that the Postal Service's regulation must be invalidated as an impermissible "broadscale prohibition" because it prohibits members of the public from bringing guns

into the post office.  *See* Pls.' Br. 49 (internal quotation marks omitted).

Although plaintiffs attempt to analogize this case to First Amendment

cases addressing various types of expressive activity in various settings, the

relevant point is that in the context of the Second Amendment in particular,

the Supreme Court made clear in *Heller* that its decision does not "cast

doubt on longstanding *prohibitions* on the possession of firearms by felons

and the mentally ill, or laws *forbidding* the carrying of firearms in sensitive

places such as schools and government buildings."  *Heller*, 554 U.S. at 626

(emphasis added).

Nor do plaintiffs advance their argument by relying on the Court's

statement that the Second Amendment "necessarily takes certain policy

choices off the table," *Heller*, 554 U.S. at 636.  *See* Pls.' Br. 49.  The

surrounding sentences of the *Heller* decision make clear which "policy

choices" the Court was referencing.  The next sentence says that the

impermissible policy choices "include the absolute prohibition of

handguns held and used for self-defense in the home."  *Heller*, 554 U.S. at

636.  The preceding sentence emphasizes that "[t]he Constitution leaves the

District of Columbia a variety of tools for combating [handgun violence],

including some measures regulating handguns," and cross-references the

list of permissible measures discussed above, including laws forbidding handgun possession in certain locations. *Id.* (citing *id.* at 626–27 & n.26). The *Heller* decision cannot plausibly be read to foreclose regulations of the type at issue here.

**B.    The Postal Service has authority to preserve government property for the purposes to which it is dedicated.**

Regulations on government property are fundamentally different from regulations applicable to other locations. In the context of the First Amendment, the Supreme Court has long recognized that the "United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose." *Adderley v. Florida*, 385 U.S. 39, 48 (1966). Rather, "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* at 47. Accordingly, government property may generally be "reserve[d] . . . for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

Plaintiffs are mistaken to suggest that the government has relinquished its authority to exercise control over government property by making it open to the public. *See* Pls.' Br. 34–35 & n.14. The fact that "members of the public are permitted freely to visit a place owned or operated by the Government" does not eliminate the government's authority to preserve it for the purposes to which it was dedicated. *See Greer v. Spock*, 424 U.S. 828, 836 (1976).

This analysis has specifically been applied to postal facilities (and not just to the buildings themselves). *See, e.g.*, *Initiative & Referendum Institute v. U.S. Postal Serv.*, 685 F.3d 1066 (D.C. Cir. 2012). The courts of appeals have unanimously concluded that speech regulations applicable to interior postal sidewalks—that is, sidewalks on postal property other than those that "form the perimeter of post office property and are indistinguishable from adjacent public sidewalks," *id.* at 1068—must be upheld so long as they are reasonable and viewpoint neutral. *See id.* at 1070–73; *Del Gallo v. Parent*, 557 F.3d 58, 70–72 (1st Cir. 2009); *Paff v. Kaltenbach*, 204 F.3d 425, 433 (3d Cir. 2000); *Jacobsen v. U.S. Postal Serv.*, 993 F.2d 649, 656 (9th Cir. 1992); *Longo v. U.S. Postal Serv.*, 983 F.2d 9, 11–12 (2d Cir. 1992); *United States v.*

*Belsky*, 799 F.2d 1485, 1489 (11th Cir. 1986); *see also United States v. Kokinda*, 497 U.S. 720, 727–29 (1990) (plurality opinion) (same conclusion).

Plaintiffs provide no explanation for why government regulations on its own property satisfy the First Amendment so long as they are reasonable and viewpoint neutral, but must satisfy much more rigorous scrutiny to comply with the Second Amendment. It is no answer to observe that the Supreme Court in *Heller* rejected reasonableness review in the context of that case, which involved a total prohibition on the possession of firearms for self-defense within the home. *See* Pls.' Br. 37–38. The Supreme Court did not remotely suggest that every regulation relating in any way to firearms would be subject to heightened scrutiny, any more than First Amendment cases holding that restrictions on expression are generally subject to heightened scrutiny preclude reasonableness review for regulations pertaining only to government property. And this Court has already held that some firearms restrictions do not implicate the Second Amendment, and thus are not subject to heightened scrutiny. *See, e.g.*, *Peterson v. Martinez*, 707 F.3d 1197, 1209–12 (10th Cir. 2013).

**C.** **Whether or not the Second Amendment applies outside the home, it does not provide a right to bring firearms onto government property.**

Plaintiffs mistakenly suggest that the government's "central argument is that the Second Amendment has no application outside the home," Pls.' Br. 10, and devote many pages to seeking to establish that the Second Amendment applies outside the home, *see id.* at 10–29.  As explained in the government's opening brief, "[t]his Court need not resolve in this appeal whether the Second Amendment has any application outside the home."  Gov't Opening Br. 16.  Rather, the question presented here relates to plaintiffs' claimed Second Amendment right to bring firearms onto particular government property dedicated to a specific purpose.  In addition to the controlling precedent cited above, the historical record confirms that the Second Amendment was never understood to prohibit the government from regulating firearms on property on which it conducts government business.

1.  Plaintiffs' apparent view that the right to bear arms includes a right to bring arms indiscriminately onto government property cannot be squared with the Supreme Court's repeated admonitions that the right does not extend so far.  Moreover, available nineteenth-century authorities

suggest that the right to bear arms was never thought to encompass a right to bring firearms onto property owned by others.

In *English v. State*, 35 Tex. 473 (1871), the court observed that it would be "little short of ridiculous" to "claim the right to carry" weapons "into a peaceable public assembly, as, for instance, into a church, a lecture room, a ball room, or any other place where ladies and gentlemen are congregated together." *Id.* at 478. The court noted that "[i]t is safe to say that almost, if not every one of the states of this Union have a similar law upon their statute books, and, indeed, so far as we have been able to examine them, they are more rigorous than the act under consideration." *Id.* at 479.

Other judicial decisions from the nineteenth century similarly made clear that citizens had no expectation to be free from prohibitions on firearms in particular locations. *See* Gov't Opening Br. 19–20 (citing cases). So long as people are generally "unrestricted in the bearing and using of [firearms], except under special and peculiar circumstances, there is no infringement of the constitutional guarantee." *Hill v. State*, 53 Ga. 472, 476 (1874).

Plaintiffs offer no examples of authorities suggesting that states were precluded from limiting the locations at which firearms could be

possessed. Instead, plaintiffs criticize other aspects of the nineteenth-century state-court decisions. *See* Pls.' Br. 21–22. The relevant point is not whether each of the cases relied upon correctly interpreted the Second Amendment, or its state analogue, in every respect. The point is that each such case proceeded on a common understanding that the public could not generally expect to be permitted to carry firearms to any location they wished. In the face of such evidence, there is no basis for plaintiffs' apparent view that regulations of the type at issue here are not longstanding. *See* Pls.' Br. 13 n.4.

Plaintiffs' suggestion that the Texas Court of Appeals stated "that 'there is no doubt' a person has the right to carry a gun to the local post office while picking up his mail" reflects a fundamental misunderstanding of the case cited. *See* Pls.' Br. 22 (quoting *Lynch v. State*, 6 S.W. 190, 191–92 (Tex. Ct. App. 1887)). That case had nothing to do with the Second Amendment, its state analogues, or any prohibition on firearms on public property. The court was addressing the question whether a killing was premeditated, and noted that the defendant was permissibly carrying a firearm while traveling on a public road. *Lynch*, 6 S.W. at 192. The fact that the defendant was going to the post office was relevant only insofar as it

12

was evidence that he was not seeking out the victim for the purpose of killing him.  At most, the case constitutes circumstantial evidence that firearms were not prohibited at that particular post office in 1887, though that point is not discussed specifically.  It has no bearing on whether the government would have had authority to enact such a prohibition.

The other cases upon which plaintiffs rely likewise do not support the notion that the Second Amendment protects an unfettered right to possess firearms on government property.  In *City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971), an intermediate court in New Mexico considered an ordinance that made it unlawful for people to carry "'deadly weapons, concealed or otherwise, on or about their persons, within the corporate limits of the City of East Las Vegas.'"  *Id.* at 738 (quoting City Ordinance No. 3-3).  Although the criminal defendant happened to have been arrested in the police station, the physical location of the ordinance's application did not form part of the court's analysis.[1]  The court did not

---

[1] Plaintiffs assert, without citation, that "the court explicitly concluded that the right to bear arms extends to government buildings." Pls.' Br. 18.  The court drew no such conclusion, explicitly or implicitly.

remotely suggest that the government would be powerless to regulate the possession of loaded firearms in police stations.

*In re Brickey*, 70 P. 609 (Idaho 1902), also involved an outright ban on carrying firearms in cities and towns in Idaho. The court made explicit that the "legislature may, as expressly provided in our state constitution, regulate the exercise of [the right to bear arms], but may not prohibit it." *Id.* at 609. Whether or not the Second Amendment would prohibit the statute at issue in *Brickey*, the case accords with the general understanding, discussed in the government's opening brief but ignored by plaintiffs, that a "government was not thought to infringe the right to bear arms unless it enacted a 'statute which, under the pretense of regulating, amounts to a destruction of the right' to bear arms." Gov't Opening Br. 20 (quoting *State v. Wilforth*, 74 Mo. 528, 530 (1881)).

2. Modern cases have echoed the nineteenth-century state cases in rejecting plaintiffs' effort to equate *any* recognition of a Second Amendment right outside the home to an *unfettered* right to carry firearms outside the home. In *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), the Fourth Circuit did not need to resolve the question whether the right to bear arms extended beyond the home in order to uphold a firearm

restriction applicable to land under the jurisdiction of the National Park Service. Plaintiffs focus on the respects in which the regulation at issue in that case was ostensibly more permissive than the one at issue here, *see* Pls.' Br. 27–28, but ignore the respect in which the regulation at issue here could be considered to be narrower. The regulation at issue in this case concerns a small parcel of property solely dedicated to the functioning of a single government agency. The regulation at issue in *Masciandaro* was applied to a parcel of land that "is used for recreational purposes and includes a restaurant, marina, biking trail, wooded areas, and other public facilities." *Masciandaro*, 638 F.3d at 460.

In any event, the regulation at issue in *Masciandaro* was readily upheld, and the court's decision in that case casts no doubt on the permissibility of the regulation at issue here. Plaintiffs' reliance on *Masciandaro* simply highlights the absence of any decision that has invalidated any regulation similar to the one at issue here.

In *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), the Second Circuit "proceed[ed] on th[e] assumption" that the Second "Amendment must have **some** application in the . . . context of the public possession of firearms." *Id.* at 89 (emphasis in original). The court

nonetheless upheld a prohibition on carrying handguns in public without a demonstration of "proper cause." *Id.* at 91. The Third and Fourth Circuits have taken a similar approach. *See Woollard v. Gallagher*, 712 F.3d 865, 869, 876 (4th Cir. 2013) ("assum[ing] that the *Heller* right exists outside the home," and concluding that a state can permissibly prohibit public possession of handguns in the absence of a "good and substantial reason"); *Drake v. Filko*, 724 F.3d 426, 432 (3d Cir. 2013) ("[a]ssuming that the Second Amendment individual right to bear arms does apply beyond the home," and upholding a regulation requiring a showing of "justifiable need" for those who wished to carry firearms outside the home), *petition for cert. filed*, 82 U.S.L.W. 3449 (U.S. Jan. 9, 2014) (No. 13-827).

Plaintiffs characterize these cases as addressing "regulations of the right that fall far short of the total ban imposed by the [Postal Service]." Pls.' Br. 25. But plaintiffs' efforts to characterize this case as a "total ban" find no support in the case law or in common sense. The government's opening brief explained, and plaintiffs do not dispute, that the regulation at issue here "presents no obstacle to Bonidy's ability to own a gun, to keep it at home, and to carry it in most public places." Gov't Opening Br. 33. Such a limited regulation cannot plausibly be characterized as a "total ban."

16

The limited nature of firearm regulations that concern only particular locations was highlighted in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), on which plaintiffs rely.  There, the Seventh Circuit expressly contrasted the provision before that court, which it characterized as a "blanket prohibition on carrying gun[s] in public," from provisions that "ban[] guns merely in particular places," as to which "a person can preserve an undiminished right of self-defense by not entering those places."  *Id.* at 940; *see also id.* at 940–41 (reiterating that states can prohibit guns in sensitive places, citing *Heller*).  The court's discussion of localized restrictions cannot be reconciled with plaintiffs' characterization of the regulation at issue here as a "total ban."

The narrowness of the regulation challenged here is further underscored by comparison to the one at issue in *Peruta v. County of San Diego*, ___ F.3d ___, 2014 WL 555862 (9th Cir. Feb. 13, 2014).  There, the Ninth Circuit invalidated a permitting requirement for concealed weapons, concluding that the Second Amendment applies to the bearing of arms in public, *id.* at *3–*19, and that the scheme in question "destroy[ed] the right altogether," *id.* at *20–*22.  The court "conclude[d] by emphasizing, as nearly every authority on the Second Amendment has recognized,

*regulation* of the right to bear arms is not only legitimate but quite appropriate." *Id.* at *29 (emphasis in original). Far from equating a restriction on particular government property to a total ban, the court quoted the Supreme Court's statement in *Heller* that its opinion should not be read to "'cast doubt on' . . . 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings.'" *Id.* (quoting *Heller*, 554 U.S. at 626).

In *Bateman v. Perdue*, 881 F. Supp. 2d 709 (E.D.N.C. 2012), upon which plaintiffs also rely, a district court in North Carolina invalidated a prohibition on possessing or transporting weapons during a state of emergency. *Id.* at 711. The court's analysis rested heavily on the comprehensive nature of the restriction, and the court considered it "[m]ost significant[]" that the provision "prohibit[ed] law abiding citizens from purchasing and transporting to their homes firearms and ammunition needed for self-defense." *Id.* at 715. Regulations applicable to particular parcels of government property bear no relationship to the ordinance at issue in *Bateman*.

Here, there is no occasion to address the issues presented in cases that involved regulations on firearm possession in all public places, or to

determine whether heightened scrutiny should apply to regulations that apply to "public roads" and "sidewalks." Pls.' Br. 35. In the First Amendment context, the Supreme Court has distinguished between public sidewalks, streets, and parks, on the one hand, and government property reserved for a particular purpose, on the other. Unlike other government property, sidewalks, streets, and parks, though technically owned by the government, "'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Greer*, 424 U.S. at 835–36 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939) (opinion of Roberts, J.)).

It is unclear that these areas were also traditionally left open to possession of firearms. But whether or not that historical question would be relevant in a case involving a restriction applicable to public places generally, it has no relevance here. This case does not involve land that has traditionally been thought of as held by the government in trust for the public as a whole. Instead, the property at issue here is used by the government itself to transact its own business. As discussed above,

plaintiffs present no evidence of any recognized right to bear arms on such property.

3.  To bridge the gap between the narrow regulation at issue here and the cases on which they rely, plaintiffs seek to contest the government's submission that "the firearms restriction does not . . . prevent [Bonidy] from carrying his firearm throughout the rest of his day before and after visiting the postal facility." Gov't Opening Br. 34.  In particular, plaintiffs suggest that Bonidy has no way to carry his firearm during the rest of his day because he will have no place to leave it when he goes to the post office to pick up his mail. *See* Pls.' Br. 39–40.

This assertion cannot be reconciled with the undisputed evidence in the record.  The government submitted evidence that there are 20 on-street public parking places within half a mile of the post office, and that "[i]n addition to these on-street parking spaces, general public parking is available in several public parking lots in Avon." Padilla Decl. ¶¶ 2–3 [Aplt. App. A762–63]; *see also* Padilla-1, Aerial Photographs of Avon [Aplt. App. A765–68].  Plaintiffs make no effort to refute this evidence, or to demonstrate that these parking opportunities are insufficient.  Instead, they point out that instead of availing himself of these opportunities, in the past,

Bonidy has used parking lots of nearby businesses, a practice he claims is unlawful.  Pls.' Br. 40 n.16.  Bonidy's decision to use such spaces instead of available lawful, public parking does not call into question the Postal Service's determination that he may not bring his gun to *its* parking lot.

## D.  Plaintiffs misunderstand the relevant standard of review.

Plaintiffs mistakenly urge that "[n]umerous federal courts have acknowledged that a ban on law-abiding individuals possessing firearms, 'in [the] home or elsewhere, whether for self-defense or hunting, or any other lawful purpose' should be subject to rigorous scrutiny."  Pls.' Br. 40 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011)) (plaintiffs' alteration).  In the D.C. Circuit case relied upon, the court concluded that certain registration laws are subject to intermediate—not strict—scrutiny, in part on the ground that they did not "prevent[] an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose."  *Heller*, 670 F.3d at 1258.  The court's statement that the provisions before it had no such effect does not carry the negative implication that every firearm restriction, no matter how limited, that might prevent the use of a firearm for self-defense in a particular location would give rise to strict scrutiny.

The other cases upon which plaintiffs rely similarly noted limitations on the regulations before them to support a conclusion that strict scrutiny was not warranted. *See, e.g.*, *United States v. Chester*, 628 F.3d 673, 682–83 (4th Cir. 2010) (applying intermediate scrutiny in context of asserted right of domestic-violence misdemeanant "to possess a firearm in his home for the purpose of self-defense"); *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (same). Plaintiffs fail to identify any case applying strict scrutiny to any regulation remotely like the one at issue here.

Plaintiffs fare no better in suggesting that their Second Amendment challenge should be assessed based on the Postal Service's justification for its rule 42 years ago, at a time (before *Heller*) when no Second Amendment challenge was presented to the agency. *See* Pls.' Br. 36. Plaintiffs have not urged that the regulation is arbitrary and capricious or contrary to statute, but instead have urged that the regulation violates the Second Amendment as applied to plaintiff Bonidy. *See* Second Am. Compl., at 7–8 [Aplt. App. A13–14]. Plaintiffs thus do not advance their argument by relying on cases involving review of "'a determination or judgment which an administrative agency alone is authorized to make,'" which must be judged "'solely by the grounds invoked by the agency,'" *Burlington Truck*

*Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  *See* Pls.' Br. 36.  And plaintiffs likewise err in relying on *Abilene Retail No. 30, Inc. v. Board of Commissioners of Dickinson County*, 492 F.3d 1164, 1173 (10th Cir. 2007), in which the promulgating entity's purpose was relevant to the constitutional analysis.  The constitutional question presented here does not turn on the record the Postal Service generated in 1972 with regard to an issue it was not asked to consider.

**E.    The Second Amendment does not give plaintiffs license to second-guess the government's security policies.**

Further distancing themselves from the district court's analysis, plaintiffs premise their appellate argument on what they perceive as a lack of security at the Avon Post Office.  The district court held that the government's submissions were insufficient because they failed to present evidence that the Avon Post Office in particular was dangerous; plaintiffs now urge that it is so dangerous that the only way to stay safe is to possess a firearm.

Plaintiffs' argument fails on every level.  As discussed in the government's opening brief, the relevant point is whether the regulation is

justified as a general matter; the Second Amendment is not an invitation for courts to micromanage the Postal Service's security procedures at each individual postal location. Gov't Opening Br. 31–32. The Supreme Court has recognized in the First Amendment context that the Postal Service "should not be put to the test of defending in one township after another the constitutionality of a statute." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 133 (1981). And in the context of the Second Amendment in particular, this Court has recognized that "general laws deal in generalities," and thus upheld a blanket prohibition on the possession of guns by unlawfully present aliens as applied to an alien who was "carried across the border as a toddler." *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169–70 (10th Cir. 2012). Here, without acknowledging this precedent, plaintiffs ignore the regulation's general application and seek to focus only on the specific security situation at the Avon Post Office.

But even if the focus is placed on the Avon Post Office, plaintiffs provide no support for their argument. Plaintiffs urge that a prohibition on firearms is ineffective because criminals would likely defy it. Pls.' Br. 45–46. But they present no evidence that this has been a problem at the Avon

Post Office, nor more generally that the Postal Service's security scheme has been ineffective there. The record reflects that the Postal Service conducts annual security assessments at each facility, including the Avon Post Office, and allocates resources based on the needs of each facility. *See* Milke Decl. ¶¶ 25–29 [Aplt. App. A92–94].

The government's declaration also explained why the firearms regulation aids the Postal Inspection Service in its efforts to combat crime in postal facilities. *See, e.g.*, Milke Decl. ¶¶ 31, 46–49 [Aplt. App. A94–95, A98–99]. The regulation forms a critical part of the Postal Service's security strategy not only in Avon, but nationwide.

Plaintiffs would prefer that the Postal Service adopt a different scheme for ensuring the safety of postal patrons, employees, and facilities, and suggest in particular that more enforcement of the prohibition against firearms would resolve their Second Amendment concerns. Pls.' Br. 46, 50. But while the Second Amendment may leave it to individuals to make a determination about how to ensure that they are secure in their own homes, it does not provide a roving license to second-guess security policies on government property. Rather, the Supreme Court has made clear that it is for the government to determine whether, as part of its

security strategy, it wishes to "forbid[] the carrying of firearms in . . .

government buildings."  *Heller*, 554 U.S. at 626.

## CONCLUSION

For the foregoing reasons, and those stated in our opening brief, the

judgment of the district court should be reversed insofar as it invalidated

the Postal Service regulation as applied to the Avon Post Office parking lot,

and affirmed insofar as it upheld the Postal Service regulation as applied to

the post office building.

<div style="margin-left: 40%;">

Respectfully submitted,

STUART F. DELERY
  *Assistant Attorney General*

JOHN F. WALSH
  *United States Attorney*

 s/ Daniel Tenny
_____
MICHAEL S. RAAB
DANIEL TENNY
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

</div>

MARCH 2014

**CERTIFICATE OF COMPLIANCE WITH**
**FEDERAL RULE OF APPELLATE PROCEDURE 28.1(E)(2)**

I certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 28.1(e)(2). This brief contains 5,184 words.

s/ Daniel Tenny
Daniel Tenny

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2014, I electronically filed the
foregoing brief with the Clerk of the Court for the United States Court of
Appeals for the Tenth Circuit by using the appellate CM/ECF system.
Participants in the case are registered CM/ECF users and service will be
accomplished by the appellate CM/ECF system.

s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that:

1. All required privacy redactions have been made.

2. The hard copies to be submitted will be exact copies of the

electronically filed version of this brief.

3. This brief was scanned for viruses using the following software:

Microsoft Forefront Endpoint Protection 2010
Virus definition version 1.167.1334.0
Updated 3/6/2014

<div align="right">
s/ Daniel Tenny<br>
Daniel Tenny
</div>