Nos. 13-1374, 13-1391

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

TAB BONIDY, *et al.*,
Plaintiffs-Appellees,

v.

UNITED STATES POSTAL SERVICE, *et al.*,
Defendants-Appellants.

On Appeal from the United States District Court for the District of Colorado
No. 10-cv-02408-RPM, The Honorable Richard P. Matsch

**APPELLEES' REPLY BRIEF**
(Oral Argument is Requested)

James M. Manley
Steven J. Lechner
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

Attorneys for Plaintiffs-Appellees

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................... iii

SUMMARY OF ARGUMENT ................................................................ 1

ARGUMENT ...................................................................................... 2

I.    THE *HELLER* DICTA CREATES A REBUTTABLE PRESUMPTION IN CERTAIN CASES—THAT PRESUMPTION WAS EITHER INAPPLICABLE OR REBUTTED HERE ......................................................................... 2

II.    FORUM ANALYSIS HAS NO APPLICATION IN THE SECOND AMENDMENT CONTEXT ....................................... 7

III.   THE SECOND AMENDMENT PROTECTS THE RIGHT TO CARRY ON POSTAL PROPERTY ...................................... 11

IV.   HEIGHTENED SCRUTINY IS MANDATED BECAUSE THE USPS BAN NULLIFIES THE RIGHT TO CARRY ON POSTAL PROPERTY ............................................................ 17

V.    THE USPS BAN FAILS UNDER INTERMEDIATE OR STRICT SCRUTINY ...................................................... 19

CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adderley v. Florida*,
385 U.S. 39 (1966) ............................................................ 8, 9

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) ......................................................... 19

*In re Brickey*,
70 P. 609 (Idaho 1902) ..................................................... 14

*City of Las Vegas v. Moberg*,
485 P.2d 737 (N.M. Ct. App. 1971) ................................. 14

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ......................................................... *passim*

*English v. State*,
35 Tex. 473 (1871) ........................................................... 12, 13

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ............................................ 10

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ....................................... *passim*

*Hill v. State*,
53 Ga. 472 (1874) ............................................................. 12, 13

*Illinois Ass'n of Firearms Retailers v. City of Chicago*,
961 F. Supp. 2d 928 (N.D. Ill. 2014) ............................... 4

*Initiative and Referendum Institute v. U.S. Postal Service*,
417 F.3d 1299 (D.C. Cir. 2005) ....................................... 9, 11, 20

*ISKCON Miami, Inc. v. Metropolitan Dade County*,
147 F.3d 1282 (11th Cir. 1998) ....................................... 8

*Kachalsky v. Cnty. of Westchester*,
    701 F.3d 81 (2d Cir. 2012) ................................................................ 13

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) .......................................................... 16

*Morris v. U.S. Army Corps of Engineers*,
    2014 WL 117527 (D. Idaho Jan. 10, 2014) ...................................... 12, 19

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ........................................................................ 8

*Peruta v. County of San Diego*,
    742 F.3d 1144 (9th Cir. 2014) ........................................................ 13

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ...................................................... 1, 3, 7, 11

*State v. Shelby*,
    2 S.W. 468 (Mo. 1886) .................................................................. 15

*State v. Wilforth*,
    74 Mo. 528 (1881) ........................................................................ 15

*United States v. Anderson*,
    559 F.3d 348 (5th Cir. 2009) .......................................................... 5

*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010) .......................................................... 2, 4, 10, 17

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013) ........................................................ 4, 10

*United States v. Decastro,*
    682 F.3d 160 (2d Cir. 2012) .......................................................... 2

*United States v. Dorosan,*
    350 F. App'x 874 (5th Cir. 2009) .................................................... 6

*United States v. Frazier,*
    314 F. App'x 801 (6th Cir. 2008) ...................................................... 5

*United States v. Huitron-Guizar,*
    678 F.3d 1164 (10th Cir. 2012) ...................................................... 21

*United States v. Kokinda,*
    497 U.S. 720 (1990) ...................................................... 9, 10

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) ...................................................... 10

*United States v. Masciandaro,*
    638 F.3d 458 (4th Cir. 2011) ...................................................... 10, 14, 15

*United States v. McCane,*
    573 F.3d 1037 (10th Cir. 2009) ...................................................... 5, 6

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010) ...................................................... 4, 5, 10, 17

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) ...................................................... 10

*United States v. Virginia,*
    518 U.S. 515 (1996) ...................................................... 21

*United States v. Vongxay,*
    594 F.3d 1111 (9th Cir. 2010) ...................................................... 5

*United States v. Walters,*
    2008 WL 2740398 (D.V.I. July 15, 2008) ...................................................... 6

*United States v. Williams,*
    616 F.3d 685 (7th Cir. 2010) ...................................................... 2–4, 10

*U.S. Postal Service v. Council of Greenburgh Civic Associations,*
    453 U.S. 114 (1981) ...................................................... 20

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) .......................................................................... 11, 19

*Woollard v. Gallagher*,
    712 F.3d 865 (4th Cir. 2013) ................................................................ 21

## <u>Constitutional Provisions</u>

U.S. Const. amend. I ......................................................................... 1, 7, 8, 17

U.S. Const. amend. II.......................................................................... *passim*

## <u>Statutes</u>

18 U.S.C. § 922(g)(1) .................................................................................. 5

18 U.S.C. § 922(g)(8) .................................................................................. 5

## <u>Regulations</u>

36 C.F.R. § 327.13 ..................................................................................... 12

39 C.F.R. § 232.1(*l*) ..................................................................................... 1

## <u>Rules</u>

5th Cir. R. 47.5.4 ........................................................................................ 6

## <u>Other Authorities</u>

72 Fed. Reg. 12,565 (Mar. 16, 2007).......................................................... 12

Eugene Volokh, *Implementing the Right to Keep and Bear Arms
for Self-Defense: An Analytical Framework and a Research
Agenda*, 56 UCLA L. Rev. 1443 (2009).................................................... 8

*United States v. Sheldon*, in Transactions of the Supreme Court of
the Territory of Michigan (W. Blume ed. 1940) ...................................... 4

W. Rawle, A View of the Constitution of the United States of America (1825) ...................................................................... 4

Webster's New 20th Century Dictionary (2d ed. 1977) ......................... 3

## SUMMARY OF ARGUMENT

This case involves the application of the United States Postal Service's firearms ban, 39 C.F.R. § 232.1(*l*), to both the Avon Post Office lobby and the adjacent parking lot.  With respect to the lobby firearms ban, the district court erred in concluding that *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), required analysis only of open carry, that the lobby is a "sensitive place," and that even if it were a sensitive place the Appellants (collectively "the USPS") could avoid heightened scrutiny.  The USPS concedes the first point and disregards the case law on the second and third.

Breaking with this Court's precedent and the weight of authority from other circuits, the USPS suggests that its firearms ban is subject to less than intermediate scrutiny, either based on an expansive reading of dicta in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), inapposite First Amendment doctrine, or a straw man argument about the scope of the Second Amendment.  These theories cannot save the USPS from carrying its constitutional burden.

The USPS has yet to present the sort of empirical evidence courts have required to justify firearms bans; even bans on felons possessing firearms have been subject to more rigorous review than the USPS thinks is necessary for its ban on law-abiding individuals possessing firearms for self-defense.  Like every other law severely burdening Second Amendment rights, the USPS firearms ban is

subject to heightened scrutiny.  As demonstrated herein and in Bonidy's Principal

Brief, the ban is unconstitutional.

## ARGUMENT

I.    **THE *HELLER* DICTA CREATES A REBUTTABLE PRESUMPTION IN CERTAIN CASES—THAT PRESUMPTION WAS EITHER INAPPLICABLE OR REBUTTED HERE.**

This case involves the Avon Post Office lobby and the adjacent parking lot,

both open to the public 24 hours a day, seven days a week.  This case has nothing

to do with the restricted access portions of the Avon Post Office, where Bonidy

makes no claim to be able to possess a firearm.  This nuance is evaded by the

USPS, who place the entire Avon Post Office inside the "government buildings"

category of the *Heller* "sensitive places" dicta and, allegedly, outside the Second

Amendment.  USPS Resp. Br. at 3–4 (citing *Heller*, 554 U.S. at 626).

The USPS does not address the authorities that have interpreted *Heller*'s

"sensitive places" dicta.  Those decisions held that the dicta creates a rebuttable

presumption regarding certain "longstanding" regulations, which is overcome "by

showing the regulation does have more than a de minimis effect upon [Second

Amendment] right[s].  A requirement of newer vintage is not, however, presumed

to be valid."  *Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1253 (D.C.

Cir. 2011); *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012); *United

States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Chester*, 628

F.3d 673, 679 (4th Cir. 2010) ("In fact, the phrase 'presumptively lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'") (quoting *Williams*, 616 F.3d at 692); *see also Peterson*, 707 F.3d at 1218 n.1 (Lucero, J., concurring).  By failing to address these authorities, the USPS concedes that the district court erred in shifting the burden to Bonidy to prove the unconstitutionality of the USPS ban.  Bonidy Principal Br. at 37–39.  By itself, the USPS's silence on this issue defeats its reliance on the *Heller* dicta.[1]

Additionally, the USPS's reliance on the *Heller* dicta ignores that decision's own warning not to "rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued."  *Heller*, 554 U.S. at 625 n.25.  The USPS also ignores that the Court's list of "presumptively lawful regulatory measures . . . does not purport to be exhaustive," i.e., the Court's list was not "considered thoroughly." *Heller*, 554 U.S. at 627 n.26; Webster's New 20th Century Dictionary 641 (2d ed.

---

[1] The USPS also does not dispute that the correct reading of *Peterson*, 707 F.3d at 1208–09, is that the government has historically had flexibility to allow either open or concealed carry.  Bonidy Principal Br. at 23–25.  But the district court's denial of Bonidy's lobby claim was premised on its reading of *Peterson* as requiring all right-to-carry claims to be analyzed as open carry claims.  Mem. Op. and Order at 4–5 (Aplt. App. at A918–19).  Accordingly, the USPS should have been required to prove that the ban on both open and concealed carry in the Post Office lobby is constitutional.

1977).  Moreover, the authorities the Court cited in support of the "presumptively lawful" dicta deal with prohibitions on misuse of firearms, not prohibitions on self-defense.  *Heller*, 554 U.S. at 626 (citing W. Rawle, A View of the Constitution of the United States of America 123 (1825) ("[T]he carrying of arms abroad by a single, individual, attended with circumstances giving just reason to fear that he purposes to make an unlawful use of them, would be sufficient cause to require him to give surety of the peace.") and *United States v. Sheldon*, in 5 Transactions of the Supreme Court of the Territory of Michigan 337, 346 (W. Blume ed. 1940) ("No rights are intended to be granted by the constitution for an unlawful or unjustifiable purpose.")).  It is unsurprising that laws prohibiting firearms carried in schools or government buildings for an "unlawful or unjustifiable purpose" would be "presumptively lawful."  But that says nothing about whether the USPS firearms ban is unconstitutional as applied to Bonidy's otherwise lawful possession of a firearm for self-defense.

Consistent with the Supreme Court's repeated warnings, federal courts, including this Court, have rejected the USPS's suggestion to merely rest on the *Heller* dicta.  *See United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010); *see also United States v. Chovan*, 735 F.3d 1127, 1134–39 (9th Cir. 2013); *Chester*, 628 F.3d at 679; *Williams*, 616 F.3d at 692; *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 933 (N.D. Ill. 2014) ("Ultimately, however,

because *Heller* did not need to go any further, the opinion did not draw an explicit line between constitutional and unconstitutional firearms regulations.").

Contrary to the USPS's suggestion, USPS Resp. Br. at 3–4, this Court has not abdicated its role when confronted with cases that might implicate the *Heller* dicta. In *Reese*, 627 F.3d at 800, this Court assumed that 18 U.S.C. § 922(g)(8), which criminalizes possession of firearms while subject to a domestic protection order, was "presumptively lawful" on its face, but nevertheless concluded that "there is little doubt that the challenged law . . . imposes a burden on conduct, i.e., Reese's possession of otherwise legal firearms, that generally falls within the scope of the right guaranteed by the Second Amendment." *Id*. at 801. This Court therefore proceeded to analyze § 922(g)(8)'s constitutionality as applied to Reese. *Id*. at 800–05.

The USPS suggests that *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), took a different approach, USPS Resp. Br. at 4, but the decision in that case simply relied on the reasoning of the Fifth Circuit in *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009). *Anderson* upheld an 18 U.S.C. § 922(g)(1) felon-in-possession conviction on the basis of existing circuit precedent left unchanged by *Heller*. 559 F.3d at 352. The Tenth Circuit took the same approach in *McCane*. 573 F.3d at 1047 (citing *Anderson*); *accord United States v. Vongxay*, 594 F.3d 1111, 1116 (9th Cir. 2010); *United States v. Frazier*, 314 F. App'x 801,

807 (6th Cir. 2008); *United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008). There is no Tenth Circuit precedent—or precedent in any other circuit—assessing the constitutionality of the USPS firearms ban.[2] Accordingly, *McCane* does not save the USPS from shouldering its Second Amendment burden here, even if the USPS ban could be labeled "presumptively lawful" within the *Heller* dicta.

The USPS, however, does not present a compelling argument that the *Heller* dicta should be read so broadly as to include the Avon Post Office lobby (much less the adjacent parking lot). The USPS argues that all government buildings are outside the protection of the Second Amendment. USPS Resp. Br. at 5. Every court to consider the *Heller* dicta has looked beyond government ownership to the objective characteristics of the buildings at issue. Bonidy Principal Br. at 32–33. The USPS does not grapple with these cases, instead parsing the *Heller* dicta in the most formalistic way possible in an attempt to avoid the approach taken by all these other courts.

An unsecured lobby open to the public 24 hours a day, seven days a week is not a sensitive place. Bonidy Principal Br. at 32–36. Even if the lobby were a

---

[2] *United States v. Dorosan*, 350 F. App'x 874, 875 (5th Cir. 2009), which dealt with a restricted-access parking lot that "the Postal Service used . . . for loading mail and staging its mail trucks," not a parking lot open to the public, is of no precedential value even in the Fifth Circuit. *See* 5TH CIR. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent . . . .").

sensitive place and the firearms ban were therefore presumptively lawful, the

USPS should not have been allowed to avoid its Second Amendment burden,

because Bonidy rebutted the presumption by showing that the USPS "regulation

[has] more than a de minimis effect upon [Second Amendment] right[s]." *Heller II*,

670 F.3d at 1253; *Peterson*, 707 F.3d at 1218 n.1 (Lucero, J., concurring); Bonidy

Principal Br. at 38–39.

## II.   FORUM ANALYSIS HAS NO APPLICATION IN THE SECOND AMENDMENT CONTEXT.

The USPS revises and expands an argument made in passing in its opening

brief, claiming that the USPS firearms ban is subject only to "reasonableness

review," because "[g]overnment regulations on its own property satisfy the First

Amendment so long as they are reasonable and viewpoint neutral . . . ." USPS

Resp. Br. at 9; *cf.* Br. for Appellants at 12 ("The Second Amendment has no

application to the regulation at issue here.").  The USPS is advocating application

of First Amendment public forum analysis; although, the USPS never comes right

out and says as much.  Nor does it explain how forum analysis would work in the

Second Amendment context.

The USPS's suggestion to apply forum analysis is flawed in at least three

ways:  (1) the forum analysis framework is of little utility in this context, because

almost no property is dedicated to Second Amendment activity; (2) even if forum

analysis applied, the USPS firearms ban would be unconstitutional; and (3) the

majority of courts to consider Second Amendment challenges post-*Heller*—
including this Court—have applied heightened scrutiny, *i.e.*, at least intermediate
scrutiny.

Forum analysis—asking first whether government property has been
dedicated to First Amendment activity, and, if not, whether the given regulation is
reasonable—makes no sense in the present context because no government
property is dedicated to self-defense.  *Cf. Adderley v. Florida*, 385 U.S. 39, 48
(1966); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46
(1983).  Indeed, the nature of the interest in personal security protected by the
Second Amendment demands that the amendment apply where self-defense is
necessary, not just in certain places dedicated to self-defense.  *See* Eugene Volokh,
*Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical
Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009)
("[s]ome rights, such as free speech, may be only slightly burdened by laws that
bar speech in some places but allow it in many other places.  But self-defense has
to take place wherever the person happens to be.").  The idea of a "Second
Amendment zone" is absurd.  *Cf. ISKCON Miami, Inc. v. Metropolitan Dade
County*, 147 F.3d 1282, 1290 (11th Cir. 1998) ("[P]ersons wishing to distribute
literature are limited to eight areas in the airport designated by the Airport Director
as 'First Amendment zones.'").

Nevertheless, even if forum analysis applied, the USPS fails to explain how its firearms ban is necessary to "preserve government property for the uses to which it is dedicated." USPS Resp. Br. at 7. There is no evidence that a ban on law-abiding citizens carrying firearms for self-defense is reasonably necessary to prevent disruption. *Cf. United States v. Kokinda*, 497 U.S. 720, 732 (1990) ("[S]olicitation is inherently disruptive of the Postal Service's business."). Bonidy desires only to park in the postal parking lot, walk inside the lobby that is open 24/7, retrieve his mail, and return to his car. Mem. Op. and Order at 3 (Aplt. App. at A917). His preference would be to carry his firearm concealed, further diminishing any chance that the exercise of the right to carry would cause any disruption.[3] This is not remotely like a protest on "a driveway used only for jail purposes," *Adderley*, 385 U.S. at 41, or soliciting in-person donations, *Kokinda*, 497 U.S. at 733–34, or even collecting signatures on petitions, *Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1315 (D.C. Cir. 2005). Moreover, courts have acknowledged that an outright ban on constitutional activity on postal property—like that imposed by the USPS firearms ban—is unconstitutional. *See id. at* 1315 ("It is clear that a broadscale prohibition against asking postal patrons to sign petitions . . . is unconstitutional even if all postal

---

[3] As explained above, the USPS does not dispute that the district court erred in analyzing the lobby ban in light of open carry only. *See* Bonidy Principal Br. at 23–25.

properties are nonpublic forums."); *cf. Kokinda*, 497 U.S. at 738 (Kennedy, J.,

concurring) ("The regulation, in its only part challenged here, goes no further than

to prohibit personal solicitations on postal property for the immediate payment of

money.").[4]  Likewise, the USPS may not impose a broadscale prohibition on self-

defense.

Finally, the USPS conceded in the district court that reasonableness review

would be a peculiar standard to apply here, acknowledging that "courts addressing

restrictions on the possession of firearms outside the home such as the USPS

regulation have almost uniformly [applied] intermediate scrutiny."  Defs.' Opp'n at

26 [Aplt. App. at A752].  Indeed, this Court has also acknowledged that it is

required to apply at least intermediate scrutiny.  *Reese*, 627 F.3d at 801.  This is

consistent with the Ninth Circuit's recent holding "reject[ing] rational basis review

and conclud[ing] that some sort of heightened scrutiny must apply" in Second

Amendment cases.  *See Chovan,* 735 F.3d at 1137; *see also United States v.*

*Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011); *Chester*, 628 F.3d at 679;

*Williams*, 616 F.3d at 692; *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010);

*United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010); *Ezell v. City of*

*Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) ("All this suggests that a more rigorous

---

[4] The USPS relies on the plurality opinion in *Kokinda*, USPS Resp. Br. at 9, but
Justice Kennedy provided the critical fifth vote in *Kokinda*, applying intermediate
scrutiny to uphold a narrowly-tailored time, place, and manner regulation.  497 U.S.
at 738–39 (Kennedy, J., concurring).

showing than [intermediate scrutiny] should be required, if not quite 'strict scrutiny.'"); *Peterson*, 707 F.3d at 1216 (Lucero, J., concurring) ("I would apply intermediate scrutiny to both claims to the extent concealed carry is protected . . . ."). As the weight of authority demonstrates—and as this Court has required—the USPS firearms ban is subject to at least intermediate scrutiny.

## III.   THE SECOND AMENDMENT PROTECTS THE RIGHT TO CARRY ON POSTAL PROPERTY.

In its opening brief, the USPS repeatedly staked out the position that the Second Amendment does not extend beyond the home, e.g.:  "The regulation at issue here . . . steers far clear of the right to possess firearms in the home, and thus raises no Second Amendment concern."  Br. for Appellants at 27; *see also id*. at 12, 13, 16, 18, 22, and 23.  Backing away from that ahistorical and unsupported position, the USPS now argues that "the Second Amendment was never understood to prohibit the government from regulating firearms on property on which it conducts government business."  Fair enough, but irrelevant.  Bonidy has never argued that the USPS has no authority to regulate firearms on postal property; rather, the USPS has simply gone too far with the current policy because it "burden[s] substantially more [conduct] than is necessary to further the government's legitimate interests."  *Ward v. Rock Against Racism*, 491 U.S. 781, 798–800 (1989); *Initiative and Referendum Institute*, 417 F.3d at 1307–10.  The only side in this appeal that argues in favor of unfettered authority is the USPS.

The USPS asserts that no decision has "invalidated any regulation similar to the one at issue here." USPS Resp. Br. at 15. After Bonidy's Principal Brief was filed in this appeal, the U.S. District Court for the District of Idaho preliminarily enjoined a firearms ban very similar to the USPS ban. *Morris v. U.S. Army Corps of Engineers*, 2014 WL 117527, *4 (D. Idaho Jan. 10, 2014). In *Morris*, the district court held that the Army Corps of Engineers ban on firearms carried by law-abiding individuals for self-defense, 36 C.F.R. § 327.13, "is simply too broad. Drafted long before *Heller*, it violates the Supreme Court's description of Second Amendment rights in that case. This regulation needs to be brought up to date." *Id*.

The USPS ignores that bans of this sort are of recent vintage—but not so recent as to have taken into account the Supreme Court's contemporary teachings on the right to keep and bear arms. The USPS regulation at issue here was promulgated in 1972 and last updated in 2007. 72 Fed. Reg. 12,565 (Mar. 16, 2007). It has not been revisited in light of the Supreme Court's 2008 decision in *Heller*. Like the regulation at issue in *Morris*, the USPS firearms ban "needs to be brought up to date."

Overlooking *Morris*, the USPS asserts that two 19th-century state court cases support its claim of unfettered authority, repeating its reliance on *English v. State*, 35 Tex. 473 (1871), and *Hill v. State*, 53 Ga. 472 (1874). USPS Resp. Br. at 11–12. But these cases did not survive *Heller*. As explained previously, both

cases rested on the false premise that the right to keep and bear arms is dependent upon service in the militia.  Bonidy Principal Br. at 19–21.  From this false premise—which the USPS concedes—the conclusion that the government can prohibit the right to carry for self-defense follows *a fortiori*:  Because carrying firearms for self-defense is not service in the militia, a militia-dependent Second Amendment would not protect the right to carry.  But *Heller* unequivocally rejected a militia-dependent Second Amendment.  554 U.S. at 583.  The Ninth Circuit has joined the Second Circuit in observing the folly of relying on decisions that proceed from the militia-dependent premise:  "[*Hill* and *English*] shed no light on the question whether, if the right to bear arms is an individual right directed to the end of self-defense, it sanctions the public carriage of common weapons." *Peruta v. County of San Diego*, 742 F.3d 1144, 1160 (9th Cir. 2014); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 91 n.14 (2d Cir. 2012).  The USPS offers no response to either Circuit's denunciation of the primary cases upon which it relies.

Rather than attempt to distinguish the long line of cases protecting the right to carry, including the right to carry on public property, Bonidy Principal Br. at 10–29, the USPS again attacks a straw man, arguing that "[t]he other cases upon which plaintiffs rely likewise do not support the notion that the Second Amendment protects an *unfettered* right to possess firearms on government property."  USPS Resp. Br. at 13 (emphasis added).  Again, fair point, but

irrelevant.  This case does not involve the recognition of an "unfettered" right to carry; it addresses the USPS's claim of unfettered authority to prohibit firearms carried by law-abiding individuals for self-defense, "without shouldering the burdens of litigation."  *Masciandaro*, 638 F.3d at 475.

The USPS attacks *City of Las Vegas v. Moberg*, 485 P.2d 737, 738 (N.M. Ct. App. 1971), and *In re Brickey*, 70 P. 609, 609 (Idaho 1902), for not supporting an "unfettered" right to carry, without acknowledging that the prosecutions overturned in those cases were for carrying firearms on government property, including inside a government building.  *Moberg*, 485 P.2d at 738.  If the courts in those cases viewed the right to carry as not extending to government property, there would have been no basis to throw out the convictions.  That is not to say that any case has recognized an "unfettered" right to carry on public property, but neither in this Court nor below has Bonidy ever advocated for an unfettered right.

Particularly problematic for the USPS is the Fourth Circuit's decision in *Masciandaro*, 638 F.3d at 474, which the USPS attempts to distinguish only by pointing out that the government property at issue there was open to the public for different purposes and that the court of appeals upheld the regulation.  USPS Resp. Br. at 15.  The USPS does not explain how these factors had any bearing on the Fourth Circuit's analysis in that case, or this Court's analysis in this case.  That is because the Fourth Circuit did not rely on these factors at all in reaching its

14

decision, and the USPS therefore does not seriously dispute that "[a]pplying the Fourth Circuit's reasoning in *Masciandaro* to this case, the USPS ban should be struck down." Bonidy Principal Br. at 28.

The USPS is correct that several of the other federal cases dealing with the right to carry addressed statewide regulations of carry on all public property, rather than on specific public property. USPS Resp. Br. at 15–17. But the USPS glosses over that these statewide restrictions were upheld because they allowed law-abiding individuals to carry a firearm in public by proving a need for self-defense. Bonidy Principal Br. at 25, 33 n.13. In fact, the only regulations of the right to carry that have been upheld were expressly saved by their more narrow tailoring. *Id*. Even the cases the USPS cites in support of its position involved regulations of the right to carry that stopped far short of the prohibitive ban at issue here.

For example, the USPS cites a 19th-century Missouri case for the proposition that it may ban all firearms from postal property. USPS Resp. Br. at 14 (citing *State v. Wilforth*, 74 Mo. 528, 531 (1881)). But that case dealt with a law that regulated only concealed carry and included an exception for self-defense. *Wilforth*, 74 Mo. at 531 ("[We] must hold the act in question to be valid and binding, and as intending only to interdict the carrying of weapons concealed."); *State v. Shelby*, 2 S.W. 468, 469 (Mo. 1886) ("[I]t shall be a good defense to the charge of carrying such weapons if the defendant shall show that he has been

15

threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home, or property.").

No such outlet for self-defense exists in the USPS regulation. The USPS ban may cover less acreage than statewide regulations, but that is the only sense in which it is narrower. The USPS cannot seriously contend that its total ban on firearms carried by law-abiding individuals for self-defense on postal property is narrower than a regulation that allows individuals to carry firearms upon a showing of good cause. And, as the Seventh Circuit pointed out in *Moore v. Madigan,* 702 F.3d 933, 940 (7th Cir. 2012), even "when a state bans guns merely in particular places, such as public schools," the government is still required to present evidence to justify such a ban. The USPS firearms ban—and its defense of the ban—cannot be squared with the reasoning of these other Second Amendment cases. The Second Amendment protects the right to carry on postal property, and the USPS must therefore justify its firearms ban by reference to the "standards of scrutiny that we have applied to enumerated constitutional rights." *Heller*, 554 U.S. at 628.

## IV.   HEIGHTENED SCRUTINY IS MANDATED BECAUSE THE USPS BAN NULLIFIES THE RIGHT TO CARRY ON POSTAL PROPERTY.

"As with the First Amendment, the level of scrutiny applicable under the Second Amendment surely 'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" *Heller II*, 670 F.3d at 1257 (quoting *Chester*, 628 F.3d at 682). The USPS quibbles about what the D.C. Circuit meant when it said:

> As between strict and intermediate scrutiny, we conclude the latter is the more appropriate standard for review of gun registration laws. As the Third Circuit reasoned in *Marzzarella* with regard to a prohibition on possession of a firearm with the serial numbers obliterated, registration requirements "do[ ] not severely limit the possession of firearms." 614 F.3d at 97. Indeed, none of the District's registration requirements prevents an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose.

*Id.* at 1257–58. The obvious implication is that if the D.C. laws had "prevent[ed] an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose" they would have been subject to strict scrutiny. *Contra* USPS Resp. Br. at 21. In any event, what remains undisputed is that no court has applied less than intermediate scrutiny in a Second Amendment case and no court has rejected the bedrock principle that the level of scrutiny is dictated by the burden on the constitutional right at issue. *See Reese*, 627 F.3d at 801.

17

The burden here is substantial.  The USPS's effort to downplay the burden of its firearms ban ignores important facts in the record, as well as the nature of the claims for relief.  USPS Resp. Br. at 20–21.  The USPS suggests that Bonidy should just not park on postal property.  *Id*.  Factually, this accommodation rings hollow here, because Bonidy proved that the public USPS parking lot adjacent to the Avon Post Office is the only public parking consistently available to postal patrons.  Mem. Op. and Order at 2 (Aplt. App. at A916); Debbie Bonidy Dep. at 78–79 (Aplt. App. at A681); Tab Bonidy Dep. at 54 (Aplt. App. at A691).  The declaration of Gary Padilla (Aplt. App. at A761) simply reinforces that parking is severely limited around the Avon Post Office, which means that carving a Second Amendment-exclusion zone around the Post Office imposes a substantial burden on postal patrons like Bonidy.  Moreover, the Padilla Declaration illustrates that other public parking available to postal patrons who decline to give up their Second Amendment rights is at least half a mile from the Avon Post Office.  More important, alternative parking thousands of feet from the Post Office does nothing to address the claims for relief here:  the right to possess firearms for self-defense *on* postal property.  *See* Bonidy Principal Br. at 39–40, n.16.  The USPS ban is a flat prohibition on all firearms on postal property, open or concealed, with no exceptions for lawful self-defense.  Heightened scrutiny is appropriate here,

18

because the USPS ban severely limits law-abiding citizens' right to possess firearms for self-defense. *Heller II*, 670 F.3d at 1257–58.

## V.     THE USPS BAN FAILS UNDER INTERMEDIATE OR STRICT SCRUTINY.

Ultimately, as explained previously, under either intermediate or strict scrutiny the USPS firearms ban fails. Bonidy Principal Br. at 42–50; *see Morris*, 2014 WL 117527 at *4 ("While the ban on carrying firearms for self-defense may impose a burden on this core right of the Second Amendment severe enough to call for strict scrutiny, it is unnecessary for the Court to decide that issue because the regulation fails to pass muster even if intermediate scrutiny is applied."). In order to survive even intermediate scrutiny, the USPS "must establish a tight 'fit' between the [firearms ban] . . . and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.'" *Heller II*, 670 F.3d at 1258 (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). The USPS "needs to present some meaningful evidence, not mere assertions, to justify its predictive judgments." *Id*. at 1259. Offering nothing more than purported "common-sense" and similar unsubstantiated assertions, the USPS has failed to prove that the broadest possible regulation, a total firearms ban on postal property, does not "burden substantially more [conduct] than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 798–800.

The USPS does not even attempt to establish this tight fit, except for the conclusory assertion that the firearms ban "forms a critical part of the Postal Service's security strategy not only in Avon, but nationwide." USPS Resp. Br. at 25. The USPS claims a one-size-fits-all approach is necessary, but then concedes that security needs vary from facility to facility. USPS Resp. Br. at 24–25 (The USPS "conducts annual security assessments at each facility, including the Avon Post Office, and allocates resources based on the needs of each facility."). Unlike mailboxes, *U.S. Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 116 (1981), the USPS concedes that its Post Offices fall into qualitatively different categories. Regulations that burden constitutional rights must take these differences into account, lest the fit between the regulation's interest and its means becomes unreasonable. *Initiative and Referendum Institute*, 417 F.3d at 1307–10; Mem. Op. and Order at 10 (Aplt. App. at A924) ("The fit between this approach and the USPS' public safety objective is unreasonable. . . . There is no recognized difference between this small-town, low-use postal facility and the post office in downtown Denver or midtown Manhattan.").

The USPS's self-serving declaration recites instances where its firearms ban failed to prevent crime, but there is no evidence to support the USPS's contention that banning all firearms from postal property is tailored to achieve the crime prevention purpose of the ban. The burden that the USPS ban places on armed

self-defense is totally disconnected from the crime prevention interest. A "no guns" sign prohibits law-abiding individuals from carrying a firearm for self-defense, but—as the USPS's own declaration demonstrates—it does nothing to stop a criminal from using a gun in the commission of a crime. The USPS has never even attempted to show that all firearms are incompatible with the crime prevention interest, only those firearms used or intended to be used for crime. There is no question that the USPS could tailor its firearms ban to focus on misuse of weapons, without banning lawful self-defense.

The USPS does not dispute that "[n]o court has relied on the sort of bald assertions the USPS presents to justify a firearms ban," *see* Bonidy Principal Br. at 46–47, but it does contest whether its assertions should be further discounted since they came decades after the policy was promulgated. USPS Resp. Br. at 22–23. Courts applying intermediate scrutiny in Second Amendment cases have routinely begun by looking to the rationale that supported passage of a law. *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169–70 (10th Cir. 2012); *Woollard v. Gallagher*, 712 F.3d 865, 877 (4th Cir. 2013). And the Supreme Court has specifically rejected post hoc rationalization in equal protection intermediate scrutiny. *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("The justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations . . . ."). As the USPS acknowledges, its

21

regulation was enacted long before *Heller*, and without giving consideration to the Second Amendment rights it burdens, USPS Resp. Br. at 22; it is unsurprising that it is unconstitutional given its vintage.  It is overdue for an update.

## CONCLUSION

For the foregoing reasons, and those demonstrated in Appellees' Principal and Response Brief, the district court's holding that the firearms ban in the lobby of the Avon Post Office is constitutional should be reversed.  The district court's holding that the USPS firearms ban is unconstitutional as applied to Bonidy's use of the parking lot at the Avon Post Office should be affirmed.  The case should therefore be remanded for entry of judgment in favor of Bonidy.

DATED this 24th day of March 2014.

Respectfully submitted,

/s/ James M. Manley
James M. Manley
Steven J. Lechner
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

Attorneys for Plaintiffs-Appellees

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Fed. R. App. P. 28.1(e) and 32(a)(7)(C), I certify that this

brief is proportionally spaced and contains 5,439 words.  I relied on Microsoft

Word to obtain the count.  I certify that the information on this page is true and

correct to the best of my knowledge and belief formed after a reasonable inquiry.


/s/ James M. Manley
James M. Manley

## <u>CERTIFICATE OF ELECTRONIC FILING</u>

Pursuant to Fed. R. App. P. Rule 25, 10th Cir. R. 25, and the 10th Cir.

CM/ECF User Manual, I hereby certify that:

(1)     all required privacy redactions have been made;

(2)     the electronic submission is an exact copy of the hard copies filed

with the Clerk;

(3)     the electronic submission was scanned for viruses with the most

recent version of a commercial virus scanning program, BitDefender

Antivirus Pro Plus 2012, updated March 24, 2014, and, according to

that program it is free of viruses.


/s/ James M. Manley
James M. Manley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of March 2014, the foregoing document was filed using the appellate ECF system and that all parties of record were served through that system.  Additionally, I certify that seven copies of the foregoing document will be delivered to the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit within two business days.

/s/ James M. Manley
James M. Manley